THE COUNTY BOARD OF SUPERVISORS OF DANE COUNTY vs. DUNNING and others.

*Limit of right to trial by jury in suits at law—Action on official bond—Compulsory reference where long account involved—Sec. 19, ch. 140. R. S.—Ch. 88, Laws of 1864.*

1. Sec. 19, ch. 140, R. S., which provides for ascertaining by the verdict of a jury, in an action on a penal bond, the fact of a breach, and the amount due, is modified by ch. 88, Laws of 1864, which provides for a compulsory reference when the trial of an issue of fact will require the examination of a long account.

2. Ch. 88, Laws of 1864, is not in conflict with sec. 5, art. I of the constitution of this state, which declares that "the right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy;" a compulsory reference in cases involving the examination of long accounts having been authorized by the law and practice of the territory of Wisconsin before the constitution was adopted.

3. In an action against a county treasurer on his official bond, where one defense was that the defendant had been released and discharged from further liability on the bond by the supervisors of the county, it was not error for the court, against the defendant's objection, to refer the cause to referees "to hear and determine the whole issue, and to state the facts found by them and the conclusions of law separately, and report to the court their findings, with the evidence, and the exceptions taken on the hearing."

APPEAL from the Circuit Court for *Dane* County.

Action against *Dunning* as former treasurer of said county, and the sureties on his official bond, for alleged breaches thereof. These breaches consisted in the failure to account for and pay over to his successor in office certain moneys, such as the five per cent added by statute to unpaid taxes, twelve per cent. interest charged on delinquent taxes, and various fees and charges, erroneous credits and footings, and moneys collected by sales of land for delinquent taxes, but which the county was obliged afterwards to refund because the taxes on the land had in fact been paid before the sales, but which moneys, it is alleged, were not accounted for by said treasurer. The thirteenth breach assigned is as follows: "that said *Dunning* did not, during his said term of office, keep a just and true account of the receipts of moneys which came into his hands by virtue of his office, in any book or books kept by him for that pur-

pose, open to the inspection of the board of supervisors of said county, or of any member of said board, but, on the contrary, did negligently and wrongfully omit to make any entries upon any such book of the several sums received by him as mentioned in the [first eight and tenth] breaches hereinbefore assigned, and did erroneously credit himself with the sum of ten dollars as mentioned in the ninth breach so assigned, which said omission and errors did not come to the knowledge of the plaintiff or the persons composing the board of supervisors of the county of Dane, or any of them, until long after said *Dunning's* term of office had expired." The answer, after denying the alleged breaches, states that *Dunning*, "after the expiration of his term of office as said treasurer, and on or about the 5th of January, 1855, fully accounted together with the plaintiffs of and concerning all moneys received by him as treasurer of said county during the time aforesaid, which included the various sums mentioned in said complaint; and upon such accounting, all the accounts, and the various items with which he was properly chargeable, were examined and considered, and the said parties arrived at a true balance        *        * * and the said *Dunning* then and there paid over to his successor the balance found due, and he was fully discharged from all further liability to the plaintiff as such treasurer."

An affidavit of one of the plaintiff's attorneys was filed, stating, among other things, that certain of the issues, "and the impeachment of said alleged settlement, by proof that the said sums, which were justly chargeable to said *Dunning* at the time of said settlement, and which are specified in said complaint, were not embraced in said settlement, will require the examination of a long account on the side of the plaintiffs, and of the items embraced in said alleged settlement, amounting to over one hundred in number, of various dates; and that the plaintiffs propose to impeach said account and alleged settlement by such proofs." On this affidavit, the court ordered that it be referred to three referees named, "to hear and determine

the whole issue in this cause, and that they shall [should] state the facts found by them and their conclusions of law separately, and report their findings, together with all the evidence taken by them, and all exceptions taken on the hearing," to the court. The defendants appealed from this order.

*J. C. Hopkins* and *S. U. Pinney*, for appellants, contended that at the time of the adoption of our state constitution, parties were entitled as a matter of right to have the issues in every law case tried by a jury, and that ch. 88, Laws of 1864, is in violation of the constitution, which declares that the right shall remain inviolate. The decision in *Norton v. Rooker*, Burnett, 42, cited in *Mead v. Walker*, 17 Wis., 189, is not good law, and has been discredited by subsequent decisions of this court. In some states the practice of referring cases involving the examination of long accounts was adopted before there was anything in the fundamental law to prevent it. 24 Wend., 337; 2 Cowen, 815. But when common law actions were first used in this territory, there came with them the guaranty in the federal constitution, that "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved;" and that in the ordinance of 1787, Art. 2, which declares that the inhabitants of the said territory shrll always be entitled to the benefits of the writ of *habeas corpus* and trial by jury. *Norval v. Rice*, 2 Wis., 29. These were also secured by sec. 12 of the act establishing a territorial government in Wisconsin. The decisions of the territorial courts and the action of the territorial legislature could not destroy the right. Practice, acquiesced in for a long time, could not abrogate it. But there never has been any such practice, though there have been some rare cases where such references have been ordered. Counsel here criticized at length the reasons assigned for the decision in *Rooker v. Norton*, contending that they were clearly erroneous, and that the decision cited there to sustain the doctrine of the court (*Emerick v. Harris*, 1 Bin., 424; *Donald v. Schell*, 6 S. & R., 240,) do not support it.

2. Our statute (secs. 22 and 23, chap. 132, R. S.) does not provide for a *trial* before referees, but only the taking of testimony and the expression of their opinions for the consideration of the court. The court may review the same, and on motion enter judgment thereon, or set aside, alter or modify it, and enter judgment upon it as modified. The court, therefore, really tries this case; and *such* a reference is unconstitutional. In other states the referees are generally *triers* of the case, like jurors, and they are so spoken of in the case in Burnett, p. 42. See 12 Johns., 218; Burrill's Pr., 440; 2 Whitt. (3d ed.), 422; 7 Barb., 91. In common law cases, a party, if not entitled to a jury trial, is entitled to a trial before a court which sees the witnesses produced, and a party cannot be compelled to take his testimony out of court, or away from the hearing of the tribunal which is to pass upon it. 3. In this case the question as to the settlement with *Dunning* by the supervisors, alleged in the answer, and the circumstances and extent of it, is the main question; the items and accounts are merely *incidental*; these all appear upon the public records of the county, and do not fairly fall within the class of accounts that are properly triable by referees. To withdraw the main issue from a jury, under these circumstances, is a gross outrage on the rights of the defendants. 4. Under secs. 19–20, ch. 140, R. S., which provides for proceedings in actions on bonds, proof of a single breach would authorize judgment for the penal sum. A subsequent proceeding is provided for, by which the court is to ascertain the amount for which execution is to issue, unless a motion is made for a jury, or the court determines that the question should be sent to a jury. The provisions of this act should prevail in suits on bonds, unless there is a manifest intent of the legislature in the passage of chap. 288, Laws of 1864, to change the law in respect to such actions. But there is no repealing clause in that act, and repeals by implication are not favored. 5. Again, if a reference can be ordered in this case for any purpose, it can be ordered after a trial of the main is-

sues, on the questions of release and whether there has been an actual breach of the bond.    The cases to which the law was intended to extend, are those in which an account must be taken at once.    No such exigency can arise in this case until after the entry of judgment against the appellants for the penalty of the bond.    *Graham v. Golding,* 7 How. Pr. R., 260; *Cameron v. Freeman,* 10 Abb., 333.

*Spooner & Lamb,* for respondents, as to the constitutionality of the act allowing a compulsory reference, cited statutes of 1839, p. 209, §84; *Rooker v. Norton,* Burnett, 33, 41; 2 Wis., 20; 6 id., 506; 14 id., 461; *Mead v. Walker,* 17 id, 180; *Lee v. Tillotson,* 24 Wend., 337; *Murphy v. People,* 2 Cow., 815; *Lewis v. Garrett's Adm'rs,* 5 How. (Miss.), 434; *Low v. Commissioners,* R. M. Charlt., 203; *Ross v. Irving,* 14 Ill., 171.    2. It appears from the pleadings and the affidavit on which the order of reference is based, that the question whether all the remaining accounts and all the items of account were examined and settled as alleged, and *Dunning* discharged, can only be determined by the examination of a long account.   Moreover an application to refer is a summary proceeding, on which the circuit court determines as a question of fact whether a cause is in its nature referable or not; and if enough appears in the moving papers to call for the judgment of the court on that question, the appellate court will not review its decision; and if the court below find the fact to be that the case is referable, the granting or refusing a reference is a matter of discretion, and its decision will not be reversed.    *Smith v. Dodd,* 3 E. D. Smith, 348; *Cameron v. Freeman,* 10 Abb., 333; *Whitaker v. Desfosse,* 7 Bosw., 678; *Mills v. Thursby,* 11 How. Pr. R., 113; *Kennedy v. Shilton,* 1 Hilt., 546; *Sheldon v. Wood,* 3 Sandf., 739; *Dean v. Empire Co.,* 9 How., 69; 15 Abb., 303 and note. 3. Counsel also argued that the question whether, after the referees had made a report, the court could modify it, and enter judgment upon it as modified, need not be discussed, because the case had not arisen.

DOWNER, J.   The circuit court, on the motion of the plaint-
iff, ordered that it be referred to three referees to hear and de-
termine the whole issue in this cause, and that they should
state the facts found by them and their conclusions of law sep-
arately, and report their findings together with the evidence to
the court.   It is contended by the appellants (defendants' be-
low), that this order violates their right of trial by jury.   The
order was made pursuant to the provisions of chapter 288, Laws
of 1864, which provides for a compulsory reference where the
trial of an issue of fact will require the examination of a long
account.   If this chapter is not in conflict with the constitu-
tion of the state, which declares that " the right of trial by ju-
ry shall remain inviolate, and shall extend to all cases at law
without regard to the amount in controversy," the order is not
erroneous.   At the time of the separation of this country from
England, courts of equity exercised concurrent jurisdiction
with courts of law in matters of account; and in suits involv-
ing long and intricate accounts, the master took and stated the
account, being armed with the fullest powers to examine wit-
nesses and the parties on oath, and made his report, and the
court rendered a decree without a trial by jury.   In cases at
law requiring the examination of such accounts, auditors took
and stated the account; but issues of fact as to particular items
might be formed before them, and they reported these issues
to the court, and they were tried by a jury, after which the ac-
counts were settled by the auditors.   The delays in courts of
law were such, and the remedy in equity so much more perfect,
that soon after equity assumed jurisdiction in actions involving
such accounts, the remedy at law, though it still remained, was
practically nearly superseded.   See Story's Eq. Jur., §§ 441 to
459.   This practice, with slight modifications, has been contin-
ued in this country.   There are very few if any of the states
of the Union, where long accounts are not investigated, and
judgment rendered on them, without the intervention of a ju-
ry, either by a reference to a master in suits in equity, or to

auditors or referees in suits at law.   It is true that the legislative power has frequently conferred on referees in suits at law the power exercised by masters in chancery, and in fact upon courts of law the power exercised by courts of equity in settling and rendering judgment upon such accounts.

In Wisconsin a compulsory reference was provided for in actions at law requiring the examination of such accounts, as early as 1839.   Stat. 1839, p. 209, § 84.   This law was declared valid by the supreme court of the territory.   *Rooker v. Norton*, Burnett's Rep., 41.   When our state constitution was adopted, it did not take away this right of reference, but only provided that the right of trial by jury should remain as it was before, except that it extended it to cases where the amount in controversy was under twenty dollars, which, according to the provisions of the constitution of the United States, could be tried without a jury. *Ross v. Irving*, 14 Ill., 171 ; *Mead v. Walker*, 17 Wis., 190.

It clearly appears that the trial of the issue in this action will involve the examination of a long account; and although the action is on a penal bond, and provision is made (R. S., ch. 140, sec. 19) for ascertaining by the verdict of a jury that the penalty is forfeited and the amount due; still we hold that the act of 1864, authorizing a compulsory reference, so far alters or modifies the former act as to warrant a reference in such cases if the circuit court shall so order.

The counsel for the defendants insist that the main issue to be tried is the release and discharge of the defendants, and that it is an outrage to deprive them of the privilege of submitting that defense to a jury.   There would be force in what they say, if the release was their only defense.   But to try the issues made, it is obvious that the plaintiff must, to make out a *prima facie* case, investigate and prove nearly the entire account of the plaintiff with the defendant *Dunning* as county treasurer for his whole term of office.   We cannot, therefore, say that the circuit court erred.

*By the Court.*—The order of the circuit court is affirmed, with costs.

A motion for a rehearing was denied at the January term, 1866.