## GILBANK vs. STEPHENSON.

PARTNERSHIP. (1, 2) *What constitutes a partnership?*
REFERENCE FOR TRIAL. (3, 4) *When compulsory reference allowed.*
ESTOPPEL. (5) *Estoppel by pleading.*
AMENDMENT OF PLEADING. (6) *Allowance of amendments by referee, to conform pleadings to proof.*

1. There was an understanding between the parties that each was to furnish one horse for breaking lands of other persons; that plaintiff was to do all the work, and defendant pay all the expenses; and that the money earned was to be equally divided between them. *Held*, a partnership.

Gilbank vs. Stephenson.

2. The parties agreed that defendant was to furnish a horse for use in the corn-shelling business, and a boy to attend the machine; and that plaintiff was to go around with the machine and do the work; and that they were to share alike in the running expenses, and in the earnings. *Held*, a partnership.

3. The fact that this case involved, among other things, an examination and settlement of *partnership* matters (which are exclusively of equitable cognizance), authorized a reference for trial even if it is not to be considered as involving "the examination of a long account."

4. Where the referee (an unofficial person) made his report in the usual manner, it must be *assumed* that he conducted the trial according to law, and that he also took an oath (if that was necessary) impartially to discharge the duty imposed upon him—nothing appearing to the contrary.

5. Where plaintiff sues to recover the value of his services, upon an implied undertaking, and defendant, by his answer, alleges that he boarded plaintiff and caused his washing to be done at plaintiff's request, and demands judgment for the value of such board and washing, it is too late to object to an allowance of plaintiff's claim for his services on the ground that, by the understanding of the parties, such services were to be paid for by the board and lodging so furnished.

6. The referee in this case, after the evidence was all in, allowed both complaint and answer to be amended so as to conform to the facts in evidence. *Held*, no abuse of discretion.

APPEALS from the Circuit Court for *Iowa* County.

Both parties appeal from the judgment in this case. The questions of fact and law presented by the record are stated with sufficient fullness in the opinion.

*Moses M. Strong*, for plaintiff.

*Cothren & Lanyon* and *Spensley*, for defendant.

Cole, J. These are cross appeals from different parts of the same judgment. The questions involved in the case are almost entirely those of fact growing out of the accounts and dealings of the parties for a number of years. The cause was referred by the circuit court to a referee for trial, against the objections of both parties, who demanded a jury trial. And the

first error relied on here by the counsel for the defendant, for reversing the judgment, is the exception to the order for this compulsory reference. He insists that it violated the right of trial by jury, and that the cause did not involve the examina tion of a long account, within the doctrine of *The Board of Supervisors v. Dunning*, 20 Wis., 210. It is by no means clear to our minds, if all the issues in this case were such as the parties were entitled to have tried by a jury, that still the examination of the various items and charges would not require the investigation of a long account, within the meaning of the authorities. But however this may be, it is very evident that the case involved an examination and settlement of partnership matters, which were properly subjects of equitable cognizance. We refer to the claims for breaking and for corn-shelling, which, as we understand the testimony, were partnership accounts. An investigation into these matters could not properly be had by a jury, and authorized the reference if it could not be sustained upon the other ground.

It is also objected that the referee was an unofficial person, who was not sworn to the proper discharge of his duties, and that his report is in no way authenticated except by his signature. In this case the referee was directed to hear and decide the issues, and to report the facts found, with his conclusions of law upon them. He made his report in the usual manner, and it must be assumed that he conducted the trial according to law. If it was necessary that the referee should take an oath impartially to discharge the duty imposed upon him, we must presume that he did so, nothing appearing to the contrary.

This brings us to a consideration of the case upon the merits. There is no controversy about some of the claims and counterclaims of the respective parties; and therefore those items need not be considered.

On his appeal the defendant objects to the allowance of the sum of $100, which the court and referee found that the plaintiff loaned to him in April, 1862, for which a note was given;

and to the claim of $40, which the court and referee found was loaned the defendant in the fall of 1868. We think the evidence sustains both these findings of fact.

In respect to the $100 item, the plaintiff swears positively that the defendant borrowed that amount of him in the spring of 1862, for which a note was given. He states that he left the note in his trunk when he went into the army, and that the note has been lost. We do not understand that the defendant denies borrowing the money, but only said he had no recollection of ever giving the plaintiff a note for $100 or any other sum. And the defendant said that he had been in the habit for the last ten years of keeping a memorandum of all promissory notes he had given different persons, and that he had no memorandum of any such note. But of course the material fact was, whether the defendant received this amount of money, which he has not repaid. This is not really denied by him. And the same remark may be made in reference to his testimony about the $40 item. It was proven that the plaintiff loaned him money in the fall of 1868, by the witness Turner. The defendant does not say that he ever paid this back. We think the evidence shows that the plaintiff was entitled to recover from the defendant both these items.

In regard to the breaking account, the understanding seems to have been that each party was to furnish one horse; the plaintiff to do all the work, the defendant pay all expenses, and the money earned to be equally divided. As to the amounts received by the respective parties for breaking, the finding of the court below is more favorable to the defendant than the facts will warrant. This point will be considered on the plaintiff's appeal. The defendant objects that the plaintiff was not charged enough for breaking his own forty. The court and referee allowed $2.50 per acre, which was certainly as much as the testimony proved this breaking to be worth.

Both parties except to the finding in respect to the corn-shelling account. The defendant in effect admits in his answer,

and the court and referee find, that this business was to be done at the joint expense of the respective parties; in other words, that it was a partnership matter, as it undoubtedly was. The referee found that the defendant was to furnish one horse; that the plaintiff was to do all the work, and go around with the corn-shelling machine, and the defendant was to furnish a boy to go with the plaintiff in shelling corn with said machine; and that they were to share alike, as well in the amount earned by shelling corn, as in the expenses incurred in running the machine. This finding is clearly sustained by the evidence. The defendant insists that a fair division of the earnings of this business would be to allow the plaintiff a one-fourth part, and that he should receive three-fourths. Although there was no actual agreement about the manner of dividing the earnings of this business, yet upon the facts proven it is reasonable to assume that the parties intended to share the earnings and expenses equally. It is conceded that they were equal owners of the machine, and no satisfactory reason has been assigned for allowing the defendant a greater share of the earnings than is given the plaintiff. The amount allowed the defendant for expenses was $100, which was more than the expenses as found by the referee. The testimony as to the actual expense of this business is quite indefinite and unsatisfactory; but, without dwelling upon it, we have concluded to affirm the finding of the court upon this claim.

The claim of the plaintiff for personal services, and the counterclaim of the defendant for board, washing, etc., furnished the plaintiff, may be very conveniently considered together. Both parties are dissatisfied with the finding and decision of the court below upon their respective claims. The court allowed the plaintiff for wages, or labor performed for the defendant, $20 a month for twenty-seven and a half months. We are inclined to hold, upon the facts disclosed, that this was too much, and that $15 a month for that period would be a fair compensation for the plaintiff's services, and all

. that the defendant should be required to pay. It is very evident that the plaintiff did not wish to engage in any regular service, but preferred to have control of his own actions, so that he might undertake any business which might offer itself to him and which promised to pay him better than the usual monthly wages. And, as remarked by the counsel for the defendant, this fact alone, that the plaintiff was not bound for any stated term, but was at liberty to come and go as he pleased, without any right on the part of the defendant to control him, would necessarily render his services less valuable than they otherwise would have been. The testimony is indeed abundant to prove that the plaintiff was a most trustworthy and valuable man on the farm, and that, if he had been willing to engage himself in regular service for a stated time, he might have commanded higher wages than $15 per month. But the plaintiff was absent, doing breaking, shelling corn, and attending to his own affairs, at various times, and doubtless occasionally worked for the defendant when he had nothing else to do. The court below found the aggregate indebtedness from the defendant to the plaintiff for work and labor over and above his board and washing to be $550. We think this claim should be diminished $137.50, which would allow the plaintiff at the rate of $15 per month for twenty-seven and a half months ; and with this modification the finding on this claim should be affirmed. This, it seems to us, will be a fair compensation for the services under the circumstances.

It is said that the plaintiff ought not to recover anything for his services when we consider the situation of the parties and the peculiar circumstances under which they were rendered. It appears that the parties were intimate and strong friends — the plaintiff a single man, without any home, and the defendant a man of family ; and it is said that it is but just to assume that the plaintiff never expected to be paid for his labor, but worked for the defendant as he did in consideration of having a home there, and being furnished with board and washing, and

receiving other kindnesses and benefits from the defendant and family. Whatever force there might otherwise be in these suggestions, it is manifest that the parties set up and rely on no such arrangement in their pleadings. The plaintiff seeks to recover for his services upon an implied undertaking, and the defendant alleges in his answer that he boarded the plaintiff and caused his washing to be done at the plaintiff's request, and demands judgment for what such board and washing are reasonably worth. After the parties have placed themselves in this position before the court, there is no ground for saying that the plaintiff had reason to suppose that the defendant intended to pay for his services by furnishing him with board and a home, and that the defendant might well have expected to pay for the services in this manner. It is reasonable, if the defendant receives pay for board and washing, that the plaintiff be paid for his wages. The parties, though once "intimate and particular friends," who "very often rendered each other mutual kindnesses," seem now disposed to follow the fashion of strangers, and to deal with each other on commercial principles. And, in view of their mutual demands, there is surely no room for saying that the plaintiff did not expect pay for his services, nor the defendant pay for his board and washing, because by the arrangement between them these were to be offset against and discharge each other.

We do not feel called upon to notice in detail the other exceptions of the defendant. We think they show no error for which the judgment should be modified in his favor.

It is claimed there was an abuse of discretion on the part of the referee and the court in allowing amendments to the complaint after the testimony was all in. In appears that the referee allowed amendments to both the complaint and answer on the 27th day of January, 1871, so as to make them conform to the proof of the respective parties. We do not think there was any error in allowing these amendments; and furthermore it does not appear that there was any exception taken to the

Gilbank vs. Stephenson.

orders allowing them to be made.  And the same remark may be made about the order of the court granting the plaintiff leave to strike out his claim for pasturage.

On the plaintiff's appeal, we think the court erred in charging him with the receipt of $100 on the claim of the firm against Gordon for breaking.    The evidence is perfectly conclusive that the defendant secured $100, the plaintiff $50, and that $50 still remains unpaid on this claim.   It is true, the defendant says that he understood that the plaintiff was to take this $50 as his part of the breaking done for Gordon, but the evidence fails to show any agreement to that effect.  As the case now stands, this is still an outstanding claim in favor of the joint breaking account.  This amount should be collected and divided between the parties, and the judgment should make provision for that purpose.    The testimony also clearly shows that the defendant received from Hall $41 for breaking, and he should be charged with this amount, instead of $38 as found by the court.

The only remaining matter of difference which we deem of sufficient importance to deserve notice, is the claim of the plaintiff for the use of his horses, wagon, etc., and the counterclaim of the defendant for the board of the horses.  The referee found that the use of the horses, wagon and harness, over and above the board of the horses, was worth the sum of fifty dollars per year, and that the defendant was indebted to the plaintiff on this claim to the amount of $400.  The circuit court rejected this claim entirely, finding as a matter of fact that the use of the horses, wagon, etc., by the defendant was not worth any sum whatever over the expense of keeping the horses. According to our view of the testimony, the circuit court was right in the conclusion reached upon this question.  The use of the horses no more than paid for their keeping, but it did fully pay for that.  There was no special agreement about the board or use of the horses, and it is quite safe to assume, from what appears in the evidence, that the plaintiff did not intend

to charge for their use, nor the defendant for their board, but to let the one offset the other. And these claims were so adjusted by the circuit court.

We have not overlooked the other exceptions argued by counsel, and will only say in reference to them that we do not think they are well taken. The result reached is, that on the defendant's appeal the judgment below must be modified so as to allow the plaintiff only $15 per month for the period of twenty-seven and a half months for his services; and on the plaintiff's appeal the judgment is modified by deducting $50 from the amount received by the plaintiff on the breaking account, and charging the defendant with the receipt of $41 from Hall. Of course the plaintiff should have interest on the amount recovered, from the commencement of the suit.

*By the Court.*— The cause is remanded to the circuit court with the directions above stated.