Severson and another vs. Porter, Garnishee, etc.

SEVERSON and another, Appellants, vs. PORTER, Garnishee, etc., Respondent.

*November 13 — December 4, 1888.*

*Voluntary assignment: Partnership doing business in names of individual partners: Fraud: Reservations of homesteads and personal property as exempt.*

1. The business of a copartnership may be transacted without the use of a firm name, and it may be agreed that the names of the individual partners or any one or more of them shall be used and bind the firm.
2. A voluntary assignment by a firm doing business in the names of the individual partners, treating all their property as firm property and all debts as firm debts, is not fraudulent as to creditors although they did not know of the copartnership.
3. The reservation of the homesteads of partners in an assignment by the firm does not render such assignment void.
4. In an assignment by a firm a reservation to each partner of personal property (specifically described in the inventory) claimed to be exempt from execution, and which had, by prior agreement, been allotted to each in severalty and actually separated from the partnership assets, does not invalidate the assignment.

APPEAL from the Circuit Court for *Rock* County.

Garnishment. The principal action was brought against Joseph K. P. Porter. The garnishee, *Isaac G. Porter*, is the assignee named in a voluntary assignment executed by Joseph K. P. Porter, William B. Porter, and Joseph B. Porter, as partners, for the benefit of their creditors. The garnishee answered denying all liability as such. The plaintiffs took issue upon such answer. Upon the trial the circuit court found the facts in substance as follows:

In 1869 Joseph K. P. Porter, who then owned and occupied a farm of about 317 acres in section 5 of the town of Porter, Rock county, took his son William B. Porter into partnership with him, and the two carried on the business of farming on said premises until 1879, when they took into

the partnership Joseph B. Porter, another son of said Joseph K. P. Porter. The firm then engaged in the general business of farming and tobacco growing, which they carried on until January 22, 1887, when the assignment above mentioned was made. This business was conducted without any partnership or firm name, but "the names of any one or more of said members of said partnership were used and signed as and for the name of the firm, and bound and made liable the said firm and all the three members thereof as partners." Joseph B. Porter, when he became a member of the firm, was admitted therein as an equal partner and became joint owner of all the partnership property equally with the other two.

From the times respectively when the two firms above mentioned were formed, all the debts owing by the firm and the members thereof, in whatever name contracted, were the debts of the firm. The firm last formed became liable for the payment of all such debts, and all of the personal property owned by the partners became the property of the firm and continued to be the property thereof until the execution of the assignment, January 22, 1887, except as hereinafter mentioned.

The title to the land above mentioned was in Joseph K. P. Porter, and he was the owner thereof until the assignment was executed. Prior to 1879 such land was subject to the incumbrance of a mortgage for $6,200, and the firm made payments to apply on the interest on said mortgage during the continuance of the partnership.

In October, 1883, the firm purchased about 320 acres of land in sections 8 and 16 in said town of Porter, the title being taken in the name of William B. Porter and Joseph B. Porter. The purchase price of said land was not found by the court, but it was found that the firm paid in cash $300, gave a note for $700 signed by all the members of the firm in their individual names and by one T. C. Rich-

ardson as accommodation maker, and that the balance of the purchase money was secured by mortgage of the premises. After such purchase the business of the firm was carried on upon both farms, and upon other lands leased by it.

In January, 1887, the firm became financially embarrassed and unable to pay its debts. The members of the firm then divided among themselves the personal property, stocks, and farming implements owned by the firm, " to a sufficient extent so that each owned in severalty sufficient of said property to make up the amount of exemptions allowed by law for each of said partners;" and thereafter, on January 22, 1887, they executed to *Isaac G. Porter*, the garnishee herein, the general assignment in question.

This action was commenced in April, 1887, upon notes given in 1885 and 1886 for the balance of an account due the plaintiffs for lumber sold and delivered. The said account was opened in 1871 against Joseph K. P. Porter, and had continued to run in that name down to the time the notes were given. After the formation of the partnership in 1879, William B. Porter and Joseph B. Porter had each got lumber from the plaintiffs, which was charged in the account against their father, and had made divers payments on said account. The notes, though signed by Joseph K. P. Porter individually, were really obligations of the firm, the lumber having been purchased and used in the business of the firm. The plaintiffs did not know that the Porters were in partnership, and had never inquired as to how they were doing business.

After the assignment was made, each of the partners claimed and retained the personal property exempt from sale on execution selected as aforesaid; Joseph K. P. Porter claimed as a homestead from the farm first above mentioned forty acres of land upon which he had resided with his family for many years; and William B. Porter, with the

consent of the other partners, selected a homestead from the farm second above mentioned consisting of forty acres upon which, prior to and at the time of the assignment, he had been residing with his family. At the time said second-mentioned farm was purchased by the firm, in October, 1883, there was owing to the plaintiffs on their account about $600. The inventory filed by the assignors contained a description of all the property assigned, and also of the homesteads and the personal property which the assignors intended to reserve.

The court further found that the assignment was made in good faith and without any intent to defraud or hinder or delay creditors.

As conclusions of law from the foregoing facts the court found, in substance, that the assignment was valid; that the garnishee was not liable as such to the plaintiffs; and that the partners were entitled to the exemptions of personal property and to the homesteads selected by them. From the judgment entered accordingly in favor of the garnishee the defendants appealed.

*John M. Whitehead*, for the appellants, contended, *inter alia*, that the separate property of J. K. P. Porter must be applied primarily to the payment of his separate debts. *Lord v. Devendorf*, 54 Wis. 491, 495; *McNair v. Rewey*, 62 id. 167, 171. Being in debt, J. K. P. Porter could not give his property to his sons to the injury of his creditors. Upon the same principle that persons not partners *inter se* are held to render themselves liable as such by holding themselves out to be partners, it will be held that where the members of a firm have allowed one of their number to appear as the owner of or having full power of disposition over the property owned by the firm, an innocent third party thereby led into dealings with such apparent owner has the same rights as if the latter were really the owner of such property. By the assignment J. K. P. Porter has

given a preference to the creditors of a firm, alleged to have been composed of himself and his two sons, over his individual creditors; and the assignment is therefore void. Laws of 1883, ch. 349; *Keith v. Armstrong*, 65 Wis. 225, 228; 2 Bates on Partn. sec. 825. The real estate purchased in October, 1883, was purchased with partnership funds for partnership purposes, and must be treated as partnership property. *Bird v. Morrison*, 12 Wis. 138, 153; *Fowler v. Bailey*, 14 id. 125, 129; 1 Bates on Partn. sec. 281; *Fairchild v. Fairchild*, 64 N. Y. 471, 477. The real estate belonging to the partnership must be treated as mere personalty and not subject to the usual incidents of real estate. *Paige v. Paige*, 71 Iowa, 318; *Mallory v. Russell*, id. 63; *Page v. Thomas*, 43 Ohio St. 38; *Shanks v. Klein*, 104 U. S. 18; *Collumb v. Read*, 24 N. Y. 505; 1 Bates on Partn. sec. 290. W. B. Porter was not entitled to select a homestead from the partnership real estate. *In re Sauthoff*, 16 Nat. B. Reg. 181; *Phipps v. Sedgwick*, 95 U. S. 3; *Edwards v. Entwisle*, 2 Mackey (D. C.), 43; *Bishop v. Hubbard*, 23 Cal. 514; 1 Bates on Partn. secs. 564, 566.

*I. C. Sloan*, for the respondent, argued, among other things, that as all of the property of the assignors was assigned, if they claimed more as exempt than the law allows them that was a question to be determined by the circuit court in exercising the power conferred upon it by ch. 80, R. S., in supervising the proceedings of the assignee. Plaintiffs have mistaken their remedy in attempting to garnish the assignee. If all the property of the assignors passed by the assignment, then the assignee held it upon trusts declared, and he was not subject to garnishment as having any property belonging to the assignors. Whether W. B. Porter was entitled to a homestead in the farm conveyed to him and his brother in 1883, was a question to be decided by the circuit court upon a petition by the creditors for an order directing the assignee to sell that portion of the farm

claimed as such homestead. Whether W. B. Porter could claim such homestead or not depends very largely upon the intention with which that land was purchased.

COLE, C. J. If the assignment in this case is valid, the judgment of the circuit court discharging the garnishee must be affirmed. The assignment transferred to the assignee all the property of the assignors of every kind. It is objected that the assignment was made with the intent to hinder and defraud creditors, but there is an entire absence of testimony to support such an assumption. On the contrary, the evidence shows beyond all doubt that the assignors acted in the utmost good faith in making the assignment, and did what they deemed was best for their creditors. They treated all the property as partnership property, and considered all debts contracted in the management of the business as the debts of the company. The testimony is clear, positive, and uncontradicted that the father, Joseph K. P. Porter, in 1869, entered into a partnership with his son William B. to carry on a general business of farming and raising tobacco. They conducted this business until 1879, when Joseph B., the other son of Joseph K. P., became a member of the firm, and joint owner of all the partnership property, and equally liable for all the debts of the old firm. And it was understood and agreed among themselves that all the old debts and subsequent debts, whether contracted in the name of one or two or all of the partners, should bind the copartnership and be deemed partnership liabilities. Unless we disregard all the evidence in the case, these facts must be deemed conclusively established. The object of Joseph K. P. Porter in entering into this partnership was, as he testifies, to aid his sons, to give them a "good chance" to acquire property; consequently, all the personal property owned by him, or the money contributed by his sons to the business, was treated as the property of the firm. It appears that the business was conducted and carried on with-

out any firm name, and that the names of any one or more of the members were signed as and for the firm, and represented it.   This was the intention of the parties, and there was no legal objection to the business being conducted in that manner; for if, by agreement among themselves, the individual names of the partners, or any one of them, was to be used and bind the firm, the obligations would be good against the copartnership.   In this case it appears that notes were sometimes signed by each partner, or by two of them, or by one alone; but still the intention was to contract a firm debt.   They could, doubtless, adopt any name, and agree that it should represent the firm in its business transactions.   This is a familiar and well-settled principle of the law of partnership.   See Parsons on Partn. 124 *et seq.*   Says this author: "When parties agree to transact business jointly, or under an agreement to share in the profits, the name or firm which they use is arbitrary and conventional. They may use the name of both, or of one of them alone, or any distinct designation by which all will be included and bound as if their names were used."

We do not perceive any legal objection to the assignment.   It is said there are reserved in the instrument certain exemptions in favor of the assignors, and that this renders the assignment void.   We think this position untenable.   As we have observed, all the property of the assignors, of every kind and nature, is expressly transferred and set over to the assignee for the payment of debts, "except such as is exempt from levy and sale under an execution by the laws of the state, the same being more fully and particularly enumerated and described in the inventory."   In the inventory of assets certain personal property is specified as that claimed by the individual assignors as and for their exemptions.  There are also homestead exemptions specified, which are reserved as and for a homestead by Joseph K. P. Porter and William B. Porter.

It has been decided in a number of cases that such a

reservation in an assignment of partnership property did not render the assignment void. *First Nat. Bank v. Hackett*, 61 Wis. 336; *Bates v. Simmons*, 62 Wis. 69; *McNair v. Rewey*, 62 Wis. 167; *First Nat. Bank v. Baker*, 68 Wis. 442; *German Bank v. Peterson*, 69 Wis. 561; *Cribben v. Ellis*, 69 Wis. 337. So far as the homestead is concerned, that is secured to the debtor by the statute, and a clause reserving what the debtor could not assign without the consent of his wife would surely not invalidate the instrument. See *Batten v. Smith*, 62 Wis. 92. But the court held that each of the assignors was entitled to the exemption of the personal property respectively selected by him. This decision was based upon a finding, which is fully sustained by the evidence, that in the forepart of January, 1887, and before the assignment was made, the partners divided the personal property of the firm to a sufficient extent, so that each owned in severalty an amount equal to the exemption allowed him by law. This will bring the case within the decision in *O'Gorman v. Fink*, 57 Wis. 649, where it is held that one partner with the consent of the others may claim a separate exemption out of partnership property where there has been a severance of such joint property. At all events, it is quite clear the reservation would not avoid the assignment; and we see no good reason for denying each partner his statutory exemption under the circumstances. The firm property was actually selected and separated from the partnership assets before the assignment was in fact made. The fact that such exempt property was included in the inventory, as it was, should not be deemed a waiver of the exemption, nor does it afford any reason for holding the assignment void. If the assignors have claimed and taken personal property of greater value than the law allows each to hold, the court could direct the assignee to recover the excess and apply it in payment of debts. The statute gives the court ample

power to make all necessary orders for the execution of the trust. Sec. 1693, R. S. Whatever property is not exempt, or which the firm owned, or any member of it was interested in, was expressly assigned for the payment of the creditors of the assignors. If there should be any question in the case as between the creditors of the individual members and the creditors of the firm, as suggested by the respondent's counsel, it would be competent for the court to marshal the assets and apply them in an equitable order by paying partnership debts out of partnership assets, and individual debts out of private or separate property. But we think the proof shows clearly that all the assets and all the creditors are assets and creditors of the firm.

It is said that Joseph K. P. Porter had no right to give his property to his sons to the injury of his individual creditors. We fail to find any evidence in the case that he has done so.

It seems unnecessary to remark that, if the parties dealing with the firm were ignorant of the fact that a copartnership existed between Joseph K. P. Porter and his sons, this cannot affect the assignment, nor change the rights of the creditors. The evidence shows that the assignee was not liable as garnishee to the plaintiffs in this action, and there was no error in giving judgment in his favor.

*By the Court.*— The judgment of the circuit court is affirmed.