Sullivan, Appellant, vs. Sullivan and others, Respondents.

*May 13—June 10 1904.*

(1) *Reference: Setting aside report: Retrial by court: Discretion.*
(2-5) *Partnership: What constitutes: Indorsement of check by committee of partners: Liability.*

1. Where the evidence reported by a referee was so uncertain, indefinite, and insufficient that the trial court could not determine therefrom one of the important issues of fact, and the referee's findings did not cover all the issues, and some of such findings were contrary to the undisputed evidence, it was

not an abuse of discretion for the trial court to set aside the referee's report and findings and the order of reference, and to try the case *de novo*.

2. An agreement between several persons to conduct a certain business and, after paying all expenses and losses thereof, to divide the net profits in proportion to their respective shares, constituted them partners in such business.

3. The fact that some of such persons owned the real estate used in the business and the others paid them for the use thereof, did not prevent them from being partners; nor was it essential that any particular partnership name should have been agreed upon.

4. A committee of partners which had been authorized by all members of the firm to sell its manufactured products, and which had thereafter made all sales and collections and had divided the net proceeds among the partners, had authority to indorse for the firm and deliver to a bank a check received for such products; and such check having been dishonored and duly protested, all the partners became liable on such indorsement.

5. One partner having refused to pay his share of the liability on such check, said committee had the right to retain and apply thereon his share of the profits of a subsequent sale.

APPEAL from a judgment of the circuit court for Green county: B. F. DUNWIDDIE, Circuit Judge. *Affirmed.*

This is an action to recover the value of the plaintiff's share of a quantity of cheese which the complaint alleges was owned by the plaintiff and the three defendants and Michael Sullivan, Chris. Bowman, and Theodore Gerber, therein named as tenants in common, and which cheese the defendants, contrary to the wishes, direction, and notice of the plaintiff, sold January 20, 1902, and converted the proceeds thereof to their own use; that the plaintiff's share of the proceeds and value of the cheese so sold and converted was $230, for which the plaintiff claims judgment, with interest from December 20, 1901, when the plaintiff demanded and gave written notice for the division of the cheese, as required by sec. 4257, Stats. 1898.

The defendants answered, by way of plea in abatement, to the effect that January 15, 1901, the plaintiff and the three

defendants and the three other persons named in the complaint, as mentioned, entered into a copartnership for the manufacture and sale of cheese at the Speich & Sullivan cheese factory for the season commencing May 1, 1901; that the seven persons so named, including the plaintiff, were and are copartners in the manufacture of cheese at said factory during the season named, and in the proceeds arising from the sales thereof; that the seven persons named were jointly, if at all, liable to the plaintiff by reason of such copartnership, but not severally; that the three persons named, but not made parties defendant, are still living and reside in the county, and are necessary parties defendant. Such allegations were repeated in the answer on the merits, and it was further alleged that the cheese in question and all cheese so manufactured was owned by the seven persons named as copartners; that in June, 1901, at a meeting of the seven persons named, three persons therein named were selected by the firm as a committee to act for and in behalf of the firm in selling such cheese, collecting the proceeds thereof, and distributing the same among the copartners; that all of the cheese so manufactured was sold by such committee for the firm; that the plaintiff's share of the proceeds of such sales had been fully and fairly accounted for and paid to the plaintiff by said committee; that all of the cheese so manufactured had been sold by the committee prior to the time when the plaintiff demanded a division, and that the same had been done with the knowledge, advice, consent, and acquiescence of the plaintiff; that before the commencement of this action the committee had fully accounted and paid over to the plaintiff his share of all of the moneys received by them for the sale of cheese so manufactured and $44 in excess, and that the cheese named in the complaint is the same mentioned in the answer. The answer further denies each and every allegation of the complaint not admitted or specifically denied.

On April 8, 1902, the cause was referred to J. M. Becker to hear, try, and determine. A trial being had before the referee, he made his report, consisting of findings of fact and conclusions of law, June 13, 1902, in favor of the plaintiff. Thereupon, and upon motion of the plaintiff to confirm such report and for judgment, and upon motion of the defendants to vacate and set aside the report, the court, on January 30, 1903, denied and overruled such motion of the plaintiff, and further ordered that the findings of fact and conclusions of law so made by the referee, and the order of reference therein, be vacated and set aside, for reasons therein stated; and it was further ordered that further testimony be taken, and further arguments be had before the court. Thereupon such trial and hearing were had before the court, and at the close thereof the court made findings of fact and conclusions of law to the effect:

(1) That in January, 1901, the defendants were the owners of the cheese factory in question, located partly on the land of the defendant *Chris. Speich* and partly on the land of the defendant *P. O. Sullivan,* and sometimes called the "Sullivan-Speich Factory," and sometimes the "Speich & Sullivan Cheese Factory;" that the owners of the factory did not run it themselves, but united with others in the employment of a cheesemaker to run the same, the defendants receiving an agreed amount for the use thereof as rent.

(2) That January 15, 1901, the seven persons named met together and signified their intention to haul milk for the ensuing season to the factory, and mutually agreed to hire a cheesemaker to run the factory and make the milk which they should respectively haul there into cheese and butter.

(3) That it was then and there agreed that the seven persons named should respectively furnish to the factory milk from the number of cows therein named—making delivery as therein mentioned—to be manufactured into cheese and butter by such cheesemaker; that each should furnish his share

of the wood, and do his proportionate share of the hauling of the manufactured product to market, and pay his proportionate share of the cost of tubs and other expenses; that after the expenses of such manufacture and sale were paid the balance of the proceeds of sale should be divided among them in proportion to the amount of milk furnished by each; that each should pay to the association a penalty for any adulterated, watered, or skimmed milk that might be so furnished, as therein stated; that the four persons who owned no interest in the factory should pay to the three owners thereof the amount of rent as therein stated for the use of the same; that the seven persons named entered into a written contract employing one Keller as cheesemaker to run the factory and make their milk into cheese and butter for the ensuing season; that in such written contract the "Sullivan & Speich Cheese Association" was named as party of the first part, and Keller as party of the second part; that such contract was not signed by any of the seven persons named otherwise than "party of the first part, Pat Sullivan, for the Company," and by Keller as party of the second part, and simply embodied the agreement between such cheesemaker and the seven persons so named.

(4) That all the parties to such written contract fully performed the same, except as hereinafter stated; that the milk brought to the factory by the seven persons named was all mingled together and made into cheese and butter by Keller, and when ready for market was sold at the factory monthly; that the seven persons named met and made sale of the May cheese to one Jacob Speich, a cheese dealer at Brodhead, who had then been engaged in that business at that place for a number of years, and that he paid for the same, and the proceeds of such sale, after paying all expenses, were divided proportionately among the parties.

(5) That thereupon, at a meeting of the seven persons named in June, 1901, it was agreed that, instead of all seven

meeting together to make such sales, a committee be appointed for that purpose, and it was then mutually agreed that the defendants *Chris. Speich* and *Ole A. Haug,* and Pat Sullivan, who represented his father, the defendant *P. O. Sullivan,* should constitute and act as such committee.

(6) That such committee thereafter made all sales and collected the proceeds thereof, and, after paying the necessary expenses which each party was liable for under said agreement, divided the balance of the net proceeds proportionately among the seven persons entitled thereto, except as hereinafter stated; that all sales were paid for by checks of the purchaser, which checks were transferred and cashed by the Bank of Monticello; that the committee sold the June and July cheese, and received the pay therefor, which was duly divided among the parties, after paying expenses; that the proceeds of the sale of one delivery in July amounted to $459.04, and the plaintiff, pursuant to and at the request of the committee, went to Monticello and saw the purchaser thereof, and received his check for the same, drawn on the Bank of Monticello to the order of "Speich Cheese Company," which the plaintiff indorsed with his own name, and received thereon from that bank the $459.04, and turned the same over to the committee, which was duly divided among the parties.

(7) That the committee sold the August and September cheese to Jacob Speich, of Brodhead, of which fact all of said parties had notice, and duly ratified; that October 17, 1901, the committee received therefor the check of Jacob Speich, drawn on the Bank of Brodhead, payable to "Speich & Sullivan Cheese Company," or order, for $1,599.94, the correct amount due; that said check was duly received and indorsed by the defendant *Chris. Speich* with the name written therein as payee, "Speich & Sullivan Cheese Company," and he delivered the check so indorsed to the Bank of Monticello, which bank paid to the committee the amount thereof, and thereupon indorsed the check, and forwarded the same for presen-

tation and payment; that upon the receipt of the $1,599.94 from the Bank of Monticello on such check, the committee, after paying the expenses, duly divided the same, and paid over to the plaintiff as his share of the net proceeds thereof $273.99.

(8) That October 17, 1901, when he issued said check, Jacob Speich only had on deposit in the Bank of Brodhead $277.42, and at no time in October, 1901, did he have on deposit sufficient to pay said check; that in October, 1901, he was wholly insolvent, but which fact was unknown until on or about October 22, 1901, when he absconded; that November 1, 1901, he was adjudged a bankrupt; that payment of the check was refused by the Bank of Brodhead, and the same was protested, and returned to the Bank of Monticello as worthless; that that bank thereupon demanded repayment from the seven persons named, and threatened legal proceedings in case the same was not paid; that each of the seven parties, except the plaintiff, after taking legal counsel, repaid to the Bank of Monticello his proportionate share of such dishonored check; that the plaintiff refused to pay his share, or any part thereof, or to recognize any liability therefor; that after such refusal of the plaintiff to so repay the committee retained in their hands $230, which was the plaintiff's share of the last sale of cheese made by them and sold to a party at Monticello, and paid the same over to the Monticello bank, and the other six parties also paid to that bank a sufficient sum to make up the amount still remaining unpaid thereon; that such repayment to the bank was made under threat of legal proceedings and upon advice of counsel and upon direction of the other parties, but without the consent of the plaintiff and contrary to his direction; that all of the acts of said committee were fully ratified by the plaintiff, except the repayment to the bank.

(9) That prior to the commencement of this action all liabilities and obligations against the seven persons named grow-

ing out of the venture for 1901, and all business matters connected therewith, were fully satisfied and discharged, save only the plaintiff's claim herein and the claim of the other parties against the plaintiff for the balance so repaid by the committee to the bank.

(10) That the seven parties named never agreed upon any name in which to do business; that at times they were called "Speich & Sullivan Cheese Company" or "Association," at times "Sullivan & Speich Company," and at other times "Speich Cheese Company;" that December 21, 1901, the plaintiff made demand for the amount so claimed as his proportionate share, which the defendants refused to pay him.

And as conclusions of law the court found, in effect, that the legal relation between the seven parties named for the season of 1901, as to such venture, was that of copartners; that the plea in abatement was sustained by the evidence; that by the indorsement and transfer to the Bank of Monticello of the check of Jacob Speich for $1,599.94 the seven parties named engaged and bound themselves to said bank that on due presentation for payment such check would be accepted and paid according to its terms, and that, if it was dishonored and the necessary proceedings on dishonor were duly taken, they would pay the amount thereof to the Bank of Monticello; that said check was duly presented for payment, protested, and notice thereof given and said check duly returned to the Bank of Monticello; that upon such return of the check so dishonored and protested the amount thereof thereby became a valid and legal obligation in favor of the bank and against all of the seven partners; that the retention of the $230 of the plaintiff's share of the proceeds of the last sale of cheese, and the payment of the said amount to the bank, with the assent and under the direction of all of the said partners except the plaintiff, was lawful and binding upon the plaintiff; that the defendants were entitled to judgment abating this action, and for their costs and disburse-

ments to be taxed. · Judgment was ordered to be entered accordingly. From the judgment so entered the plaintiff brings this appeal.

For the appellant there was a brief by *J. L. Sherron* and *A. S. Douglas,* and oral argument by *Mr. Sherron.*

For the respondents there was a brief by *P. J. Clawson* and *Colin W. Wright,* and oral argument by *Mr. Clawson.*

CASSODAY, C. J.   1. Counsel invoke the rule that the findings of the referee should not be disturbed by this court on appeal unless they are against the clear preponderance of the ·evidence. But the question here presented is not as to the effect of such findings, but as to whether the trial court was justified in setting aside and vacating the report and findings ·of the referee and the order of reference, and then trying the cause *de novo.* The principal reason given by the trial ·court for making such order was to the effect that the evidence so reported by the referee was so uncertain, indefinite, and insufficient that the court was unable to determine whether the indorsement made by the committee of the check for $1,599.94, given by Jacob Speich October 17, 1901, was sufficient to bind the plaintiff and the other six persons who shared in the proceeds of the check. Moreover, the findings ·of the referee do not seem to cover all the issues involved; and some of them seem to be contrary to the undisputed evidence. This court has held that the trial "court may, in its ·discretion, vacate the report of a referee and order a new trial before itself, when it is unable to determine whether the ·facts found by the referee are established by the proofs." *Fairbanks v. Holliday,* 59 Wis. 77, 17 N. W. 675. Certainly, we cannot say that there was any abuse of discretion in making the order in question.

2. The important question in the case is whether the plaintiff and the defendants and the other three persons mentioned ·in the complaint and answer, who contracted to deliver milk

at the factory, were copartners in the venture, as found by the trial court. As held by that court, the seven persons who thus agreed to deliver milk at the factory jointly hired the cheesemaker and mutually and jointly agreed to pay him wages therefor; and they also mutually agreed to run the bus-- iness, as found by the court, and, after paying all expenses and losses, to divide the net proceeds in proportion to the respective shares of each. It seems to have been conceded by all parties who testified before the referee that the seven persons who so agreed to deliver milk at the factory were to share any losses that might occur. The fact that three of them owned the factory, and that the other four paid them for the use thereof, did not prevent the seven from being partners in the business. There seems to be no substantial dispute in the testimony. The first witness called on the part of the plaintiff before the referee testified that "each man got his proportionate share of the profits and each man stood his proportionate share of the loss of bad cheese and his proportionate share of the expense of manufacturing."

A very learned English Master of the Rolls (Sir GEORGE JESSEL) refrained from making any attempt to define a partnership, because there had been so many attempts with no two agreements, except in a general way. *Pooley v. Driver,* L. R. 5 Ch. Div. 458, 471. In that case it was held that: "In the absence of something in the contract to show a contrary intention, the right to share profits *as profits* constitutes, according to English law, a partnership." See 1 Lindley, Partnership, 1–5. Here the expenses, and also the losses if any, were to be first paid, and then the net profits were to be divided among the seven persons, each to receive his proportionate share. This constituted a partnership by all the authorities. 22 Am. & Eng. Ency. of Law (2d ed.) 13 *et seq.;* *Ellsworth v. Tartt,* 62 Am. Dec. 749, and note. See, also, *Miller v. Price,* 20 Wis. 117; *Wood v. Beath,* 23 Wis. 254; *Gilbank v. Stephenson,* 31 Wis. 592; *Upham v. Hewitt,* 42

Wis. 85; *Wipperman v. Stacy,* 80 Wis. 345, 50 N. W. 336; *Serfling v. Andrews,* 106 Wis. 80, 81 N. W. 991. The case of *Sargent v. Downey,* 45 Wis. 498, *S. C.* 49 Wis. 524, 5 N. W. 903, seemingly relied upon by counsel, is too broadly distinguishable in its facts to require special consideration. It is true that no particular partership name was agreed upon, but it was not essential that there should have been a particular partnership name in order to constitute a partnership. *Severson v. Porter,* 73 Wis. 70, 40 N. W. 577.

The findings of the court are fully sustained by the evidence. Since the seven persons named were partners, there can be no reasonable doubt but what the duly authorized committee, representing the firm, had authority to indorse and negotiate the check as it did. The check having been dishonored and duly protested, there can be no question but what the firm were liable upon such indorsement to reimburse the bank for the amount of the check. The committee, having received $230 as the plaintiff's share of a subsequent sale of cheese owned by the firm, certainly had the right to retain the same, and apply it in payment of the plaintiff's share of such liability to the bank. Upon the facts so found the plaintiff has no cause of action against the three partners who are made defendants in this action. *Sprout v. Crowley,* 30 Wis. 187.

*By the Court.*—The judgment of the circuit court is affirmed.