MARY ELIZABETH MOORHOUSE, JULIA B. MOORHOUSE, O. B. MOORHOUSE, AND O. B. MOORHOUSE, ADMINISTRATOR, ESTATE OF ABRAHAM MOORHOUSE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5101.     Promulgated October 24, 1927.

1. Evidence held to establish that at the date of his death the decedent was the owner of a one-half interest in the business and assets of the partnership carried on under his name.

2. The value of certain items of the assets of said partnership determined.

*James C. Davis, Esq.,* and *E. A. Robb, Esq.,* for the petitioners.
*J. W. Fisher, Esq.,* for the respondent.

In the audit of an estate-tax return made on behalf of the estate of Abraham Moorhouse, deceased, the Commissioner denied the claim that a certain mercantile and grain business carried on under the name and style of "A. Moorhouse, Lumber, Grain, and Coal," was the business of a partnership composed of the said A. Moorhouse and his children, Julia B. and O. B. Moorhouse, and included in the gross estate of the deceased a value of all the assets of said partnership. He also increased the value of certain items of such assets and on that basis computed a deficiency in estate tax amounting to $1,438.35, for the redetermination of which the petitioners bring this action.

### FINDINGS OF FACT.

The decedent, Abraham Moorhouse, died September 8, 1923, a resident of Glidden, Iowa. For many years prior to July 1, 1905, the decedent had carried on a business under the name and style of "A. Moorhouse, Lumber, Grain, and Coal."

In the spring of 1905 the decedent was 65 years old; his daughter, Julia B. Moorhouse, was of age, residing with her parents, and employed as bookkeeper for her father's business. His son, O. B. Moorhouse, was also of legal age and had graduated from the Ames, Iowa, School of Engineering in the summer of 1904, was still living with his parents, and employed in his father's business. At this time the decedent, with a view of providing for his children and keeping his family and his business together, gave to each, Julia B. and O. B. Moorhouse, a one-fourth interest in his mercantile and grain business, and thereupon the decedent and his two said children formed a partnership for carrying on said business and continuing the operation of the same under the name and style of "A. Moorhouse, Lumber, Grain, and Coal." This partnership continued without substantial change or interruption to the date of the death of Abraham Moorhouse.

At the time the partnership became effective in 1905, the assets of the partnership, consisting of grain elevator, lumber and coal sheds, merchandise, cash, accounts and notes receivable, aggregated nearly $42,000. During the following 18 years much of the profits of the business were retained in the partnership accounts and invested in enlarging the properties used in the business and also in the purchase of stocks, securities, and properties of other enterprises. In some instances when stocks of other corporations were purchased with partnership funds they were taken in the name of A. Moorhouse.

Among the assets and properties of the said partnership at the time of decedent's death were—

(a) 180 shares capital stock of First National Bank of Glidden. The value of this bank stock on September 8, 1923, was $27,000.

(b) A grain elevator building, situated on railroad right of way at Ralston, Iowa. The value of this building and its equipment on September 8, 1923, was $4,000.

(c) 200 shares of capital stock of the North American Timber Holding Company. The value of this stock on September 8, 1923, was $5,000.

(d) 4 shares of the capital stock of the Glidden Cement Company. On September 8, 1923, this stock was worthless.

The decedent, Abraham Moorhouse, on September 8, 1923, held and owned a one-half interest in the assets and business of said partnership.

## OPINION.

TRUSSELL: The testimony appearing in the record of this action conclusively establishes that on or before July 1, 1905, Abraham Moorhouse and his two children, Julia B. and O. B. Moorhouse, entered into a partnership for carrying on a grain, lumber, and coal business, and that in that partnership A. Moorhouse retained a 50 per cent interest and that he gave to each of his children a one-fourth interest. Further testimony concerning the conduct of that business from 1905 to 1923 is convincing that the partnership had continued without interruption and without change and that at the date of the death of A. Moorhouse he owned only 50 per cent interest in the assets of that business. The original partnership agreement, although not evidenced by any written instrument, was valid and binding at the time it was made and by the continued conduct of the partnership remained valid and binding until the death of one of the partners. Cf. *Smith* v. *Smith*, 179 Iowa 1365; *Sullivan* v. *Sullivan*, 99 N. W. 1022. The record further establishes that the properties and investments which were added to the partnership assets were purchased with partnership funds and although some of them were taken in the name of A. Moorhouse they were the property and assets of the partnership. Cf. *Lutz* v. *Billick*, 172 Iowa 546; *York* v. *Clemins*, 41 Iowa 95, 101.

Respecting the value of the stock of other corporations here in dispute, the record contains the testimony of the surviving partners and also of the president of the First National Bank of Glidden, Iowa. This is the testimony of persons well qualified to give opinion evidence of value of the properties in question. It is uncontradicted and in our opinion clearly establishes the values hereinabove set forth in the findings of fact. Respecting the value of the elevator building

at Ralston, the respondent produced testimony of a revenue agent who had made a report concerning the estate-tax return here under consideration. It is apparent, however, from the record that the revenue agent misunderstood the information which he undertook to gather and reported to his superiors the value of the Ralston elevator and its contents at the time he made the inquiry and not its value as of September 8, 1923. All the other testimony in the record establishes the value of this elevator on September 8, 1923, as $4,000.

> The deficiency may be redetermined in accordance with the foregoing findings of fact and opinion upon 15 days' notice, pursuant to Rule 50, and judgment will be entered accordingly.

Considered by LITTLETON, SMITH, AND LOVE.