BARKER, Respondent, vs. LYNCH and wife, Appellants.

*January 13 — January 28, 1890.*

*Contracts: Married women: Garnishment by creditors of husband: Fraud: Court and jury.*

1. A married woman entered into a contract to do certain logging. Her husband guarantied the performance of the contract by her, and acted as her agent in doing the work. At the time the contract was made a previous contract by the husband to do the same work was surrendered and abandoned. Afterwards the wife authorized the owner of the logs to make payments on account of the contract to her husband and to settle with him for all matters connected therewith, and the husband receipted in his own name for moneys paid on the contract. *Held*, that the husband could not have maintained an action in his own name for money due on the contract.

Barker vs. Lynch and wife.

2. In such case, to charge the owner of the logs as garnishee of the husband for money due on the contract, it must be shown that the transaction between such owner and the wife was on their part intended to hinder, delay, or defraud the husband's creditors, or that the contract was made for the use and benefit of the husband.

3. There being evidence that the husband was entirely willing to have the contract for the logging stand in his own name and for his benefit, as it was originally made, and that the change was made because the owner of the logs wished to protect himself from liens in favor of the wife, who was supposed to own the teams employed in the work, the trial court erred in directing a verdict against the garnishee on the ground that the contract was made with intent to hinder, delay, or defraud the husband's creditors.

4. A married woman may, especially with her husband's consent, contract to cut and bank logs, although she has no separate estate.

APPEAL from the Circuit Court for *Ashland* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

The respondent brought an action against *Bernard Lynch* to recover upon a note executed by him in April, 1887, for the sum of $400, and in such action John H. Knight was summoned as garnishee. The garnishee answered, denying any indebtedness to said *Bernard Lynch*. The plaintiff took issue upon his answer. Upon the trial of the issue between the garnishee and the plaintiff, the garnishee, Knight, admitted that he was indebted upon a certain contract made between him and *Elizabeth Lynch*, the wife of *Bernard Lynch*, bearing date December 6, 1887, in a sum far exceeding the claim of the plaintiff against *Bernard Lynch*. *Bernard Lynch* and *Mrs. E. Lynch*, his wife, appeared and defended against the claim of the plaintiff in the garnishee action, and appealed from the judgment rendered in the circuit court in favor of the plaintiff. *Mrs. E. Lynch* is a proper party defendant to the garnishee action, under sec. 2767, R. S., as a person claiming the indebtedness from Knight, the garnishee, in hostility to the

claim of the plaintiff that the indebtedness is due to the defendant *Bernard Lynch*.

On the trial in the circuit court the learned circuit judge directed a verdict in favor of the plaintiff, *Barker*. To the order of the court directing the jury to return a verdict for the plaintiff, the defendants excepted, and on this appeal they assign this order and direction of the court as error.

The facts, as they appear in the record, are substantially as follows: The plaintiff, *Barker*, brought his action to recover of *Bernard Lynch* the amount due on the promissory note above mentioned. The plaintiff obtained judgment on this note against *Bernard Lynch*. His action was commenced in April, 1888. The defendant Knight was served with a garnishee process in April, 1888. The claim made by the plaintiff was that Knight was indebted to *Bernard Lynch* upon a contract made with him, by Knight, for cutting and hauling a quantity of logs for said Knight. The facts in regard to this contract are not controverted. Mr. Knight's statement in his answer to the garnishee summons was substantially proven on the trial. The following is his statement made in the answer:

"That on or about October 22, 1887, he entered into a written contract with said *B. Lynch*, by which said *Lynch* agreed to cut, bank, and load on cars about four million feet of logs during the ensuing logging season, and to save garnishee defendant harmless on account of lien claims on said logs; and garnishee defendant agreed to pay to said *Lynch* therefor $4.25 per thousand feet. Garnishee defendant further alleges that, having been informed that *Elizabeth Lynch*, the wife of said *Bernard Lynch*, owned, or claimed to own, the horses or tools with which said *B. Lynch* was doing the work under said contract, and fearing that she might, by virtue of her alleged ownership of said horses, claim to have some lien upon the logs cut under said contract, he requested of said *Bernard Lynch* to obtain his

wife's guaranty that he, the said *Lynch*, would well and truly perform his said contract. Thereupon, after some negotiations, it was agreed between garnishee defendant and said *Lynch* that a new contract should be executed between garnishee defendant and said *Lynch's* wife *(Elizabeth Lynch)*, which should contain the same provisions as the before-mentioned contract between garnishee defendant and said *Bernard Lynch*, and the faithful performance of which should be guarantied by said *Bernard Lynch*. That thereafter such a contract was executed by and between garnishee defendant and said *Elizabeth Lynch*, on the 6th day of December, 1887, and the performance thereof was guarantied in writing by said *Bernard Lynch*, and under said contracts said *Bernard Lynch* went on and completed the work. Garnishee defendant further alleges that all dealings were had with said *Bernard Lynch* under said contract."

The contract made between *Mrs. Lynch* and Knight is in writing, and was introduced in evidence on the trial. This contract is made between John H. Knight, of the first part, and *Elizabeth Lynch*, of the second part. All the stipulations and promises contained in this contract are made between Knight on the one part and *Elizabeth Lynch* on the other part. *Bernard Lynch* is not mentioned in the contract, except that, after the contract is signed by the respective parties to the same, he signed the following indorsement made thereon: " I fully agree to see that this contract is carried out in every particular. [Signed] BERNARD LYNCH." At the time this contract was executed and delivered the contract theretofore made and existing between Knight and *Bernard Lynch* was surrendered and abandoned. *Lynch* and his wife both testify that after this contract was executed *Bernard Lynch* acted as foreman and agent in carrying out and executing this contract on the part of *Elizabeth Lynch*, and that *Bernard Lynch* was

employed by his wife, and paid by her for his services in carrying out the contract.

*Geo. P. Rossman*, for the appellants.

For the respondent there was a brief by *Tomkins, Merrill & Smith*, and oral argument by *W. M. Tomkins*.

TAYLOR, J.   We think it is very clear that, upon the evidence introduced in this action, as between Knight and *Bernard Lynch*, no debt nor sum of money was shown to be due upon said contract from Knight to *Bernard Lynch*. On the face of the contract, and by the terms thereof, there is clearly nothing due to *Bernard*, and we find nothing in the evidence which tends to prove that there has ever been any transfer of the money due or to become due on said contract from *Elizabeth Lynch* to *Bernard Lynch*, and in the absence of any such evidence the money must be due to *Elizabeth* and not to *Bernard*. The only evidence offered which has any tendency to show any such transfer of interest in the contract to *Bernard* is a written request and a receipt, of which the following are copies:

"ASHLAND, WISCONSIN, January 6th, 1888.   "*To John H. Knight*:   Any moneys paid by you heretofore or hereafter to *Bernard Lynch*, my husband, on account of the logging contract I have with you for cutting the timber on section 24, township 47, range 8, Bayfield county, Wisconsin, is and shall be just the same as if paid to me; and you are authorized to settle with him for all matters connected with that logging contract.

"[Signed] .             ELIZABETH LYNCH." °

"ASHLAND, WISCONSIN, January 30th, 1888.

"Received of John H. Knight eighteen hundred and one dollars and eleven cents, on account of logging contract for cutting timber on lands in section 24, township 47, range 8.

"[Signed]             BERNARD LYNCH."

These papers are entirely consistent with the claim of

the appellants that *Bernard* was acting as agent for his wife in regard to her contract with Knight, and of themselves do not amount to an assignment of the rights of *Elizabeth Lynch* under the contract to her husband, so as to authorize him to maintain an action in his own name to recover from Knight any money due to *Elizabeth* on said contract.

Upon the testimony in this record it seems to us very clear that it is not shown that *Bernard Lynch* could successfully have maintained an action to recover from Knight the money due and unpaid by him on said contract. Ordinarily, this fact would defeat the action of the creditors of *Bernard* in recovering against Knight as garnishee of *Bernard*.

In order to entitle the creditor of *Bernard* to recover in a case where he himself could not recover against the garnishee, it must be shown that the transaction between the garnishee, Knight, and *Elizabeth*, the wife of *Bernard*, was on their part intended to hinder, delay, or defraud the creditors of *Bernard*, or that the contract was made for the use and benefit of *Bernard*. These questions are clearly questions of fact upon the evidence, and not questions of law. That there was any intent to defraud the creditors of *Bernard* is certainly far from being so clear as to justify a court in determining it as a question of law, especially under our statute, which declares that the question of intent to defraud shall be a question of fact and not of law. Sec. 2323, R. S. The evidence shows that *Bernard* was entirely willing to have the contract for the logging stand in his name and for his benefit, as it was originally made, and that the change of the contract, making the contract with his wife, was because Knight was not satisfied to have it remain as a contract with *Bernard*. Clearly, the court erred in directing a verdict on the ground that the contract was made with intent to hinder, delay, or defraud the creditors of *Bernard Lynch*.

Independently of the question of fraud, the court might be justified in directing a verdict for the plaintiff on the ground that, as *Elizabeth Lynch* was a married woman, this contract, notwithstanding our laws on the subject of the rights of married women, was void as between her and her husband, and all rights accruing to her under it would inure to the benefit of the husband. From the argument of the learned counsel for the respondent, we are inclined to think it was upon this ground that the learned circuit judge directed the verdict for the plaintiff. We think that, under our statutes and the decisions of this court made in view of them, *Mrs. Lynch* was competent to make the contract she did, and to enforce the same in all respects for her own benefit, and without her consent her husband could receive no benefit therefrom. Upon the evidence in this case, it cannot be said with any certainty that *Mrs. Lynch* had no separate estate of her own when she entered into this contract; but, if it be admitted that she had at the time no separate estate, we have held, and must still hold, that a married woman may engage in most kinds of lawful business for the purpose of creating for herself a separate estate, especially if she engages in such business with the consent of her husband. This court, in referring to the laws of this state in regard to the rights of married women, in the case of *Brickley v. Walker*, 68 Wis. 572, said: "These laws were enacted for the very purpose of enabling every married woman, though having no separate estate, to acquire one by her individual earnings, except such earnings as might accrue from labor performed by her for her husband, or in his employ, or payable by him." And in that case a contract made by a married woman with a firm of which her husband was a member was upheld as a lawful contract, without any evidence that she had any separate estate of her own when she entered into such contract. There is nothing in the nature of this contract which renders it void on the part of *Mrs. Lynch*.

The only other theory upon which the circuit judge could properly direct a verdict in favor of the plaintiff is that, although the contract is made in the name of *Mrs. Lynch*, and ostensibly for her benefit, yet in fact it was entered into by her for the sole benefit of her husband. That fact was certainly not clearly established by the evidence. If there is any evidence in the case tending to prove that fact, then it should have been submitted to the jury for their determination, and not decided by the court as a question of law.

In any view of the evidence, it seems very clear to us that the plaintiff failed to establish by the evidence facts which entitled him to have a verdict directed in his favor. For the error in directing a verdict for the plaintiff, the judgment must be reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.