FULLER & FULLER COMPANY, Appellant, vs. McHENRY, Respondent.

*November 17 — December 6, 1892.*

(*1*) *Husband and wife: Partnership.* (*2*) *Debtor and creditor: Voluntary assignment.*

1. Under our statutes husband and wife cannot become partners in business.
2. A bill of sale of the vendor's stock in trade and everything pertaining thereto was given upon trusts, contained in a letter delivered with it, (1) to pay a creditor whose agent the vendee was; (2) to pay the other creditors and return the rest to the vendors. *Held,* that this was a voluntary assignment for the benefit of creditors, within the meaning of sec. 1694, R. S., and void because not executed in the manner prescribed by that section, and because it gave a preference to one creditor over others.

APPEAL from the Circuit Court for *Milwaukee* County.

Action for taking, carrying away, and converting a stock of goods alleged to have been the property of John H. Hanson and Caretha M., his wife, as copartners under the name of Hanson & Co., at West Bend, Wis., and of which property they executed a bill of sale, April 30, 1889, to Daniel K. Green, as the agent of the plaintiff, an Illinois corporation, to secure a debt due to it of $530.89. Green took possession of the property May 2d thereafter, as such agent, to sell and dispose of it to pay said debt and others, and expenses of sale; and the bill of sale was filed on the next day thereafter, when the property was seized by the sheriff under a writ of attachment, by direction of the defendant, issued in an action in favor of said *McHenry* against said John H. Hanson, for a debt of $354.36, for which judgment was recovered, with costs, June 1, 1889, and on an execution thereon the property was sold for $500, and the money was applied to the payment of this judgment. Other writs were issued and at the time in the hands of the

sheriff, some against said Hanson and some against him and his said wife, namely, two against Hanson for about $200, and two against him and his wife for about $300; and it was claimed that the property in question was the property of John H. Hanson, and that the claim of his wife thereto, or to any interest, was fraudulent and void, and it was denied that she had any title to it, as partner or otherwise.

Evidence was given to show that the plaintiff first began to deal with the alleged firm of Hanson & Co. February 27, 1889. The order for a bill of goods of that date to plaintiff, to replenish stock, stated, in substance, that Hanson & Co. had just purchased a stock at West Bend, and opened up that day, and was signed, "Hanson & Co., by Mrs. C. M. Hanson, from Barron, Wis." It appeared that she had previously dealt with the plaintiff, and that the plaintiff sold to Hanson & Co. goods to the amount of $530, which remained unpaid. On the 28th of April a letter was written to plaintiff, purporting to be signed, "C. M. Hanson, by J. H. Hanson, her husband," saying, "We have got swindled out of $24,000 by a friend of ours," giving some details of a real-estate transaction, and inclosing a bill of sale to be filled up in the name of such party as plaintiff thought best, in order to secure plaintiff and pay certain debts, alleging that the stock was worth $2,000, and urging the plaintiff to give the matter immediate attention. Plaintiff inclosed the bill of sale and letter, May 1st, to Green, to be filled up in his name and to take possession, and they telegraphed J. H. Hanson to that effect. Green went to West Bend, inserted his name in the bill of sale, and took possession, and on the same day the goods were taken on the defendant's attachment, and other attachments soon followed.

The bill of sale appeared to have been signed by both Hanson and wife, and recited that in consideration of $2,000,

in hand paid by Green, they granted, sold, and conveyed
to him the whole of a "stock of drugs, consisting of drugs,"
etc., "and any and everything pertaining to and now being
in the building on lot one, block one," etc., "in West Bend,
with the furniture and everything, of whatever nature, per-
taining to said stock." The letter accompanying the bill
of sale explained its purpose thus: "Please send a respon-
sible party at once, and relieve us of a terrible burden and
anxiety for your interest. We hope you understand our
position. It's to get you paid up *first*, and *then* pay the
rest, as here is more than enough for all. When all is paid,
we will take the rest. In selling to you we shall avoid all
trouble, and all can be paid, as your man can close out the
stock in a few weeks. You will understand, owing to the
swindle, we have no means at present. Neither are we
known here. Hence other parties may not be willing to
extend any time."

Green testified that he went to West Bend and saw Han-
son. The bill of sale and letter of instructions had been
sent by plaintiff to him at West Bend in Hanson's care, and
it was opened, and he (Hanson) "mentioned that it would
be necessary, as a matter of form, for me to attach [insert]
my name to this document; and, thinking he was acting in
good faith, I did as he directed. By his request, my name
was put in the bill of sale. Nothing more was done until
the following day, when I had it registered. He went away
that night. I went into the store, under the bill of sale,
and the attachment was made the same day." The value
of the goods was about the amount of plaintiff's debt. He
signed his name to a receipt. The amount he could not
tell. Did not know whether it was a note. There was no
talk between Hanson and him as to what he was to do
with the stock.

The defendant testified that prior to February, 1889, he
was a druggist, and sold out to J. H. Hanson February

Fuller & Fuller Co. vs. McHenry.

27th, and took his note for $350,— the one in suit, upon which the attachment was made; and there was a large proportion of the property there when the attachment was made. The defendant's attachment, judgment, and execution were put in evidence, and a sale of the property in question thereunder was proved, and the proceeds were applied in payment thereof. The other attachments, judgments, and executions were put in evidence, and it was proved that the residue of the proceeds of the sale was applied to them in their order.

There was but little evidence, admissible as against the defendant, tending to show that Mrs. C. M. Hanson had ever entered into any partnership agreement with her husband, and none to show that she had any separate estate, or that she ever attempted to manage or exercise any control over the business in question, or had contributed anything to it; but considerable evidence was given, tending to show that the claim that Mrs. Hanson had any real interest in the matter was simulated and not real, and that her claim as alleged partner was fraudulent as against her husband's creditors.

At the close of the testimony the circuit court directed a verdict in favor of the defendant; and from the judgment thereon the plaintiff appealed.

*Chas. T. Hickox*, for the appellant, contended, *inter alia*, that a married woman may legally enter into partnership with her husband in this state and carry on a partnership business. *Haben v. Harshaw*, 49 Wis. 379; *Brickley v. Walker*, 68 id. 563; *Krouskop v. Shontz*, 51 id. 215; *Snau v. Caffe*,122 N. Y. 308. Whether she can or not, the defendant could not defend himself by raising any question as to her legal capacity so to do. *Horneffer v. Duress*, 13 Wis. 603; *David v. Birchard*, 53 id. 492. Even though they could not be copartners in a legal sense, yet the wife is entitled to her portion of the joint estate, and a convey-

ance by Hanson and wife would convey to the plaintiff a good title. *Woodworth v. Sweet*, 51 N. Y. 8; *Reiman v. Hamilton*, 111 Mass. 245–7.

*P. O'Meara*, for the respondent, argued, among other things, that husband and wife cannot enter into a partnership and render themselves jointly liable for the contracts of the firm thus established. *Artman v. Ferguson*, 73 Mich. 146, 16 Am. St. Rep. 572, and note. This court will be slow, unless forced by the clear letter of the statute, to hold that husband and wife may carry on business as copartners, for it would greatly increase the opportunities of either to defraud creditors, and it would endanger the separate estate of the wife in the many cases where the husband may desire to get it into his own possession. But the plaintiff entirely failed to show that Mrs. Hanson had one dollar in the property which was attached. *Horneffer v. Duress*, 13 Wis. 603; *Duress v. Horneffer*, 15 id. 195; *Horton v. Dewey*, 53 id. 410.

PINNEY, J. 1. It is contended on behalf of the plaintiff that the property in controversy, which was seized on execution and sold to satisfy the judgment recovered by the defendant against John H. Hanson, the husband, was the partnership property of Hanson and his wife, Caretha M. Hanson, as the firm of Hanson & Co., and had been previously transferred to Green for the benefit of the plaintiff, and to secure to it and others partnership debts of Hanson & Co., and therefore the seizure and sale of the property in question for the debt of the husband were wrongful, and that the defendant is liable for its value. It is contended that a great part of the property seized was sold to the so-called firm of Hanson & Co. by the plaintiff, and that it acquired a title to it, valid as against all but partnership creditors. The question presented is whether husband and wife can become copartners in carrying on a business, under

the statute in relation to married women, and, if not, what is the legal result of such an attempt by husband and wife to carry on business as such.

Prior to the statute concerning married women, a *feme covert* might have a separate estate, which courts of equity, only, could recognize and protect; and she might bind it by her engagements or contracts for the benefit of such estate, or on her own account or for her benefit upon the credit of such estate, which could be enforced only in equity against it, but not by way of judgment or decree as for a personal liability. Her contracts were void at law, and enforceable only in equity against her separate estate. The statute changed the former equitable ownership of her separate estate into a legal one, and, for its better security and protection, provided that her estate should "not be subject to the disposal of her husband," and that, as to subsequently acquired separate estate, it should "not be liable for his debts." It has repeatedly been held, under this statute, that the contracts of a married woman, when necessary or convenient to the proper use and enjoyment of her separate estate, are binding at law, and that all her other contracts and engagements stand, as before the statute, good only in equity, and that the change from an equitable to a legal estate has not, in respect to such other contracts, enlarged her powers or removed the disability of coverture. The power of a married woman to bind herself at law is a restricted one and limited to the making of such contracts and engagements as are necessary or convenient to the use and enjoyment of her separate estate. *Conway v. Smith,* 13 Wis. 125; *Todd v. Lee,* 15 Wis. 365; *Beard v. Dedolph,* 29 Wis. 136; *Haydock Carriage Co. v. Pier,* 74 Wis. 582, 585. It has never been held, under this statute, that the wife could contract any debt or obligation, valid at law, not fairly within this restricted power, whatever may have been said in subsequent cases as to her power to acquire and

hold property, separate and apart from her husband, with the proceeds of her individual earnings, under sec. 2343, R. S., or either of the preceding sections. And while it is conceded that, separate and apart from her husband, the wife, *with her separate estate*, not derived from her husband, may engage in and carry on business, and for that purpose contract debts and engagements binding at law, her power to do this without a separate estate exists only in the emergencies specified in sec. 2344, where her husband shall have deserted her, or shall, from drunkenness, profligacy, or any cause, neglect or refuse to provide for her support or for the support and education of her children, in which event she " shall have the right to transact business in her own name, and to collect the profits of such business," etc., and they will not be subject to her husband's control or interference, or liable for his debts. In other words, in all such cases the wife, *without a separate estate*, has the rights and powers of a *feme sole*. The guarded terms of this section show that her right to transact business in her own name, beyond the scope of the power implied from the ownership, use, and enjoyment of a separate estate, is denied, except in the particular emergencies specified. The wife has not, therefore, in our judgment, the power to enter into an agreement of partnership with her husband, nor, as for that matter, with any one else, if she has no separate estate, in respect to which she can be considered as a *feme sole*, so as to bind herself at law.

There is no competent evidence in this case that Mrs. Hanson had any separate estate at the time her husband made the purchases for the store in West Bend and started business there under the name and style of Hanson & Co.; and as the plaintiff is claiming to recover for the property in question under and through a bill of sale executed by such alleged partnership, as against an execution creditor of the husband, within repeated decisions the burden of

showing that she had a separate estate was on the plaintiff:
*Stanton v. Kirsch*, 6 Wis. 338; *Gettelmann v. Gitz*, 78 Wis.
439, and cases cited.

Had it been shown, however, that Mrs. Hanson had a
separate estate, we think that the partnership agreement
between her and her husband (if any, for there is little
more than a *scintilla* of evidence of one) must be regarded
as void, and that the business in question was the sole busi-
ness of her husband, and the plaintiff's claim is his sole and
individual debt. The purpose and policy of the statute
concerning the rights of married women, in our judgment,
forbid the formation of a continuing business engagement
between husband and wife, which shall produce a commu-
nity of interest, liability, and profit, in which the husband
would have, as partner, a right of control and management
of the separate estate of the wife, so that he could sell and
convert it into money from time to time, draw the firm
moneys from the bank, and collect notes and bills receiv-
able and dispose of the proceeds, in the payment of his
debts or otherwise, without her knowledge or consent.
The making of such an engagement by the wife might be,
if put in execution, a conversion of her separate estate into
that of her husband. Certainly, it is easy to understand
that, with his influence and control as husband, such result
would be almost inevitable. The principal purpose of the
statute is to give the wife the power and rights of a *feme
sole* as to her separate property, free " from the disposal of
her husband," and " not liable to his debts." Manifestly,
it was not intended that the act should receive a construc-
tion that would be subversive of the beneficent purposes
for which it was enacted, and which would almost neces-
sarily tend to strike down the protection it was intended
married women should have under it in the use and enjoy-
ment of their separate estates. At common law a married
woman was incapable of forming a partnership, and the

marriage of a *feme sole* partner worked a dissolution of the firm. Story, Partn. §§ 10, 306; 1 Bates, Partn. §§ 135–141. Her right to enter into a partnership, if she has a separate estate, with a person other than her husband, is quite generally recognized, and is assumed to exist in *Merchants' Nat. Bank v. Raymond*, 27 Wis. 569; but we are not aware of any case where it has been held, under a statute in substance the same as our own, that she may embark her separate estate in partnership ventures with her husband. In the case of *Suau v. Caffe*, 122 N. Y. 308, it was held that the common-law disability of a married woman to engage in a business as a co-partner or jointly with her husband, was removed by an act "Concerning the liability of husband and wife," which authorized a married woman to carry on any trade or business on her sole and separate account, and that the wife could not escape liability for debts contracted in a partnership with her husband, on the ground of coverture; but the statute in question is much broader than ours, and is unconditional. The case was decided by a mere majority,— three of the judges dissenting,— and is contrary to previous decisions of the supreme and superior courts, and would seem to be in conflict with *Hendricks v. Isaacs*, 117 N. Y. 411. The view we have taken of the statute is sustained by *Lord v. Parker*, 3 Allen, 127; *Lord v. Davidson*, 3 Allen, 131; *Edwards v. Stevens*, 3 Allen, 315; *Plumer v. Lord*, 5 Allen, 463; *Bowker v. Bradford*, 140 Mass. 521; *Payne v. Thompson*, 44 Ohio St. 192; *Haas v. Shaw*, 91 Ind. 384, 390; *Scarlett v. Snodgrass*, 92 Ind. 262; *Artman v. Ferguson*, 73 Mich. 146; *Bassett v. Shepardson*, 52 Mich. 3; *Carey v. Burruss*, 20 W. Va. 571; *Cox v. Miller*, 54 Tex. 16; *Bradstreet v. Baer*, 41 Md. 19. It is not to be supposed that the legislature intended that such relations and duties as exist between copartners in trade should be devolved on husband and wife, with their neces-

sary incidents, as a possible means of disturbing domestic peace and confidence, or that they might become contentious litigants in an action to wind up, with a receiver in charge of their affairs and resources. The statute evidently intended that the gains the wife should make in the exercise of her limited business powers should be her *sole and separate* property, and not be in any way subject to the interference, control, or disposal of her husband. The conclusion at which we have arrived is not in conflict with *Krouskop v. Shontz*, 51 Wis. 204, where the real estate upon which farming was conducted by husband and wife was her sole property, and she was held liable for that reason. No partnership was claimed to exist. Nor is it opposed in principle to *Arndt v. Harshaw*, 53 Wis. 269; *Dayton v. Walsh*, 47 Wis. 113; *Brickley v. Walker*, 68 Wis. 564; and *Barker v. Lynch*, 75 Wis. 624,— which are clearly distinguishable from the present case. The necessary result is that there was no copartnership estate or liabilities of Hanson & Co., and all the property and liabilities were those of the husband.

2. Inasmuch as the property in question was the sole property of Hanson, the execution and judgment of the defendant entitled him to impeach the validity of the bill of sale under which the plaintiff claims. The bill of sale was given upon the trusts contained in the letter from Hanson to the plaintiff, which was delivered with it, namely: *First*, to pay the plaintiff its debt; *second*, to pay the other creditors, and return the rest to Hanson and wife. The bill of sale was therefore a voluntary transfer or assignment of the stock of goods, etc., in question, for the benefit of or in trust for creditors of Hanson, and was not executed in the manner prescribed by the statute, and fell directly within the condemnation of the statute, sec. 1694, and of sec. 1693a, S. & B. Ann. Stats., because it gave and secured the plaintiff a preference over all other creditors, contrary

to the last-named section. The documents through which the plaintiff claims title created a trust, a trustee, Green, and creditors as *cestuis que trustent*, with an ultimate trust in favor of Hanson and wife. The case is thus brought clearly within the adjudged cases of *Winner v. Hoyt*, 66 Wis. 227, and *Maxwell v. Simonton*, 81 Wis. 635. The claim of title of the plaintiff was therefore fraudulent in law, and void, no matter what the intentions of the parties were; and the court properly directed a verdict for the defendant.

*By the Court.*— The judgment of the circuit court is affirmed.

On the subject of partnership between husband and wife a note is published with the case of *Gilkerson-Sloss Commission Co. v. Salinger* (Ark.) 16 L. R. A. 526.— REP.

