Sparks v. Kuss, 195 Wis. 378.

SPARKS, Appellant, vs. KUSS and others, Respondents.

*November 8, 1927—March 7, 1928.*

*Partnership: Wrongful application of assets by partner: Husband and wife as partners: Evidence: Sufficiency: Right of wife to assert partnership relation as against husband's creditors: Estoppel: Right of trustee in bankruptcy: Attachment: Goods sold by stipulation and money held in lieu thereof: Rights of parties.*

1. In determining whether a bank was a creditor of one partner, the bank is not chargeable with a sum which the other partner, who was an officer of the bank, with the knowledge of the first partner, wrongfully applied to the discharge of his personal liability instead of in reduction of the liability of the partnership to the bank. p. 382.

2. Where the evidence discloses that the bank had knowledge of a partnership relation between a husband and wife in a mercantile business and that the husband, against the wife's protests, had withdrawn more than his share of the partnership assets, a conveyance by the husband to the wife of any interest he had remaining in the partnership was not fraudulent as against the bank. pp. 384, 385.

3. Under a stipulation that the trustee in bankruptcy should sell the bankrupt's assets and hold the proceeds until the determination of a claim of the bankrupt's wife in a replevin action, the trustee held the proceeds as a stakeholder, and hence no question of adjudicating the title to property already *in custodia legis* was involved in such action. p. 386.

4. While an association is voluntary and rests upon the assent of parties and is to that extent contractual, a partnership will be implied from conduct; and even though the parties stipu-

late that their relationship shall not be that of partners, where their conduct and dealings lead to a contrary conclusion the court will so hold despite the terms of the contract.   p. 388.

5. At common law, husband and wife could not be partners because of her lack of capacity to enter into a contract, but under sec. 6.015, Stats., a married woman may contract as a *feme sole,* and hence may enter into a contract of partnership with her husband; and in this case the evidence is *held* to sustain a finding that, as between the wife, claiming ownership of the mercantile stock, and her husband, a partnership existed between them in the business.   pp. 388–390.

6. Under sec. 70 of the Bankruptcy Act and sec. 47 as amended by sec. 8 of the act of June 25, 1910, if the wife was estopped, as to creditors of the bankrupt husband, to assert title or interest as a copartner in the stock and fixtures of the business, such estoppel inures to the benefit of the trustee, and may be pleaded by him.   p. 392.

*On rehearing:*

7. The question as to whether the wife was estopped, as against the creditors of her husband, from asserting a partnership, not having been fully litigated, a new trial is granted so that the matter of estoppel may be relitigated.   p. 399.

APPEAL from a judgment of the circuit court for Forest county: C. M. DAVISON, Judge.   *Reversed.*

Replevin.   Equitable defense.   This action was begun to recover a stock of merchandise and store fixtures located in the city of Crandon, which had been seized under a writ of attachment in an action in which the *First National Bank of Crandon* was plaintiff and J. F. Sparks, the husband of the plaintiff, was defendant.   The attachment was levied on January 28, 1925.   This action was begun on or about the 2d day of April, 1925.

The defendant *J. F. Kuss* was the sheriff of Forest county, Wisconsin, and levied the attachment.   On April 7, 1925, J. F. Sparks filed a voluntary petition in bankruptcy and the defendant *Warde A. Wescott* was appointed trustee of the bankrupt estate.   On June 25, 1925, pursuant to a stipulation that the same should be without prejudice to any of the parties, the goods held by the sheriff under the writ of attachment were sold by the trustee, and the proceeds,

amounting to $11,000, are held by the trustee. A trial of the action was had in June, 1926, before a jury. At the conclusion of the trial the court discharged the jury, filed an opinion, and subsequently findings of fact and conclusions of law were made and filed.

This action was begun by the plaintiff, the wife of the bankrupt, against the sheriff and the bank, demanding $30,000 damages. The court found that the wife was the owner of and entitled to one half of the proceeds of the property, $5,500, and judgment for that amount was entered in her favor, from which the plaintiff takes this appeal.

A receiver having been appointed for the defendant *First National Bank of Crandon,* hereafter called the bank, the receiver filed notice of review of the judgment on behalf of the bank, and the trustee in bankruptcy, hereafter called the trustee, also filed a notice of review under the statute.

For the appellant there were briefs by *Eberlein & Larson* of Shawano, and oral argument by *M. G. Eberlein* and *Albert S. Larson.*

For the respondents there was a brief by *Classon & Whitcomb* of Oconto, attorneys for the *First National Bank, James B. Bereth,* Receiver, and *John Kuss,* Sheriff, and *Walter F. Kaye* of Rhinelander, of counsel, and oral argument by *Mr. Kaye* and *Mr. Allan V. Classon.*

*John McHale* of Green Bay, for the respondent *Warde A. Wescott,* trustee.

The following opinion was filed December 6, 1927:

ROSENBERRY, J. There is a printed case of 374 pages, supplemental case of 74 pages, and briefs covering 343 pages. Manifestly we cannot set forth in detail the matters covered by the very voluminous record, case, and briefs. We shall confine ourselves to stating such facts as are necessary to a disposition of the questions raised.

The first contention of the plaintiff is that the bank was not a creditor of J. F. Sparks and therefore not entitled to

maintain the action begun by it in which the attachment was levied. The plaintiff concedes that J. F. Sparks was indebted to the bank in the sum of $8,977.25; alleges that the bank was indebted to Sparks in the sum of $11,384, of which amount one item of $6,000 was the liability alleged to have been incurred by the bank in a transaction respecting the Rudloff mortgage. We shall discuss this item alone.

J. F. Sparks and one J. T. Fielding entered into a logging partnership, each agreeing to contribute $6,000 as the initial capital investment. Neither of them had any money. Sparks had the Rudloff mortgage which he pledged to the Bankers Finance Corporation for a loan of $6,000, which went into the partnership business. Fielding procured an accommodation note from J. S. Walsh for $4,500. This with an unsecured note of Sparks for $3,000 made up the amount of $13,500 necessary to make the first payment on the timber purchased by the Sparks & Fielding partnership and from which the logging was to be done. Subsequently the Sparks & Fielding partnership paid the $6,000 loan to the Bankers Finance Corporation and received back the Rudloff mortgage. In the meantime Rudloff had paid $1,500 in cash and given a renewal mortgage of $4,500. Fielding, who was an officer of the bank as well as a partner of Sparks, caused the $4,500 Rudloff mortgage to be substituted for the Walsh note and deposited the $1,500 to his own account. Manifestly when the partnership converted the $4,500 mortgage and the $1,500 of cash belonging to Sparks, it became indebted to him in that sum. Having paid his note of $6,000, it had by way of that payment returned to him his original investment, so that if Sparks be credited on the partnership books with the mortgage and cash converted by Fielding, his original contribution to the partnership is restored. Plaintiff contends that this sum of $6,000 should be charged to the bank, but the transaction was in no way for the benefit of the bank. It is not intimated that Mr. Walsh was insolvent or that the $1,500 de-

posited by Fielding to his account to the knowledge of Sparks was in any way for the benefit of the bank, so the bank cannot properly be charged with $6,000. The bank cannot be held liable because one of the partners wrongfully applied a part of the partnership assets to the discharge of his personal liability, because it was with the knowledge of J. F. Sparks if not with his approval. How the account stands between Sparks and Fielding no one has attempted to say. Fielding died December 31, 1924, and apparently left no estate. If the item of $6,000 be stricken from the amount claimed to be owing from the bank to Sparks, it leaves Sparks indebted to the bank in a substantial sum in any event. It is considered, therefore, that the bank was a creditor of J. F. Sparks at the time the attachment was levied.

Second. It is next claimed by the plaintiff that the stock of merchandise and fixtures upon which the attachment was levied was the sole property of the plaintiff. To support this claim it is urged that J. F. Sparks and his wife, the plaintiff, were partners in the mercantile business (this partnership will hereafter be referred to as the store partnership to distinguish it from the partnership of Sparks & Fielding) ; that he had drawn out of the partnership property a sum equal at least to his interest therein; that prior to the levying of the attachment he had released his interest in the remaining property to plaintiff, and that it was therefore at the time the attachment was levied her sole and separate property. The plaintiff and J. F. Sparks were married in Kentucky in 1906; they were both school teachers and she had at the time of the marriage $1,000; he had as much or more invested in land. The husband and wife started a small mercantile business in the name of the husband. About two years after their marriage they sold their property for $3,100 and removed to Nashville, Forest county, Wisconsin. There they purchased a farm consisting of about 200 acres, the title to which was taken in the name of J. F. and *Nannie Sparks*. Shortly after their arrival in Forest county,

the plaintiff and her husband, in association with one Kendall, began a small mercantile business at Nashville under the firm name of Sparks & Kendall. This arrangement continued for a year and eight months, when the plaintiff and her husband purchased Kendall's interest in the mercantile business. Eight months later Kendall repurchased a half interest in the business and the firm name was again changed to Sparks & Kendall. This arrangement continued for eight months, when the plaintiff and her husband again purchased Kendall's interest in the mercantile business. During the time that Kendall was interested in the business it was conducted in the name of Sparks & Kendall. While Kendall was a partner in the business he had other interests to which he attended. J. F. Sparks ran the farm which was owned by him and the plaintiff; *Mrs. Sparks* managed and ran the store, for which she was paid $20 per month. It is conceded that during the entire period from the commencement of the mercantile business down to January 3, 1925, except during the period when Kendall had an interest in the business, the mercantile business was conducted entirely in the name of J. F. Sparks. The plaintiff and J. F. Sparks both testified that that was the partnership name adopted. The business prospered, and in 1920 they sold out and purchased a business in the city of Crandon. While they were engaged in business at Nashville they entered into a partnership arrangement with S. Cole, in which Cole was the owner of one half and J. F. and *Nannie Sparks* were the owners of the other half, and she had an equal voice in the management of the affairs of that partnership, which was engaged in logging. The firm name was Sparks & Cole. In August, 1920, the plaintiff and her husband purchased from George Palmer a stock of merchandise located in Crandon, advising Mr. Palmer at the time that they were copartners and that if the stock were purchased it would be purchased in their names jointly. Down to the time of the formation of the partnership of Sparks & Fielding, the

plaintiff and J. F. Sparks had had some twenty real-estate transactions, in all but one of which the title to the lands purchased had been taken in the name of J. F. Sparks and *Nannie Sparks,* deeds had been placed of record, transfers of property were made by them, and the real property was held jointly. There can be no question but that the plaintiff had a large share of the responsibility of the management of the mercantile business throughout the entire period. She seems to be a woman of much more than ordinary business sagacity, an excellent manager, and highly intelligent.

It appears without dispute that the officers of the bank were informed of the real relationship existing between the plaintiff and her husband and knew they were or claimed to be partners and equal owners of the business. The Sparks-Fielding partnership was formed in September, 1923. From that time down to January 3, 1925, J. F. Sparks withdrew from the mercantile business a very large sum of money; the exact amount is not established, and it is not necessary that it should be. On January 3, 1925, J. F. Sparks, who was a director of the *First National Bank* and then knew that it was in a failing condition, who also knew that his partner Fielding was either dead or had absconded, leaving him the sole responsible person in the Sparks-Fielding partnership, had a settlement with his wife and released to her any claim that he had to the remaining store partnership property. The trial court found, and there is much argument here to support the proposition, that this was a fraudulent transfer. If it be held that the plaintiff and J. F. Sparks were partners under the facts as they existed on January 3, 1925, J. F. Sparks as against his wife had nothing to transfer. He had withdrawn from the store partnership against her protest more than his share of its assets. His interest in the store partnership on that day was a right to an accounting, which would have disclosed that the remaining assets belonged not to him but to his wife. Whatever the situation may be as to the individual creditors of J. F.

Sparks, this transaction could not as to the bank be fraudulent because it had knowledge not only of the real relationship between the parties but of the fact that J. F. Sparks, against the protest of the plaintiff, had withdrawn large sums from the store partnership for the benefit of Sparks & Fielding. The trial court found that the bank had no notice, but it is considered that that finding is against the great weight and clear preponderance of the evidence. Upon that point the wife and her children testify that they protested not only to Mr. Fielding but to the assistant cashier, Poppy. Poppy does not deny this fact, although he does not unreservedly admit it. Fielding was cashier and active manager of the bank and undoubtedly had full knowledge of the entire situation, but his interest as a partner of Sparks & Fielding being hostile to the bank, how far notice to him was notice to the bank is not determined.

It is considered, therefore, that as to the bank and *Kuss* the attachment was wrongfully levied upon the goods of the plaintiff and that she is entitled to judgment accordingly. She is also entitled to judgment for damages sustained by her by reason of the wrongful attachment down to the time when the trustee in bankruptcy took possession of the goods. Were it not for the stipulation entered into between the plaintiff, the bankrupt, the trustee in bankruptcy, and certain creditors on June 10, 1925, many puzzling and difficult questions would be presented for solution. From that stipulation it appears that a compromise was discussed and the stipulation was entered into without prejudice to the rights of any of the parties and to prevent further depreciation of the stock of merchandise. It was stipulated that the trustee, by virtue of the consent of the plaintiff, should petition the court (bankruptcy) asking for an order authorizing him to sell at public sale and "that the proceeds from said sale shall be held by the trustee intact until the final adjudication, settlement, or dismissal by consent of the parties or otherwise of all pending litigations which have for their

object determining of the ownership of the stock of goods,"
referring to this action then pending in the circuit court
for Forest county.

It was further stipulated that the attachment against the
store building occupied by the store partnership should be
dissolved and that the action brought by the bank in aid of
the attachment should be dismissed upon the merits.

It was further stipulated "that the trustee will intervene
in the replevin action now pending in the circuit court for
Forest county [this action] and hold the money subject to
the order of the court in lieu of the stock of goods. In case
that *Nannie Sparks* should be successful and the money be
required to be paid over to her, the expense of holding this
sale, making the appraisal and for legal services, to be fixed
by the referee in a sum not exceeding $500, should be first
paid out of said fund."

Under this stipulation it is considered that the sale was
made by the agreement of all parties interested and that the
proceeds thereof are held by the trustee as a stakeholder sub-
ject to the final determination of the issues in this action,
and that therefore no question of adjudicating title to prop-
erty already *in custodia legis* is involved.

Pursuant to the stipulation the trustee intervened, filed an
answer to the amended complaint, admitted the facts as to
the defendant *Kuss* being sheriff, a receiver having been
appointed for the defendant bank, a corporation; admitted
the commencement of the attachment suit; denied any knowl-
edge as to whether or not the *First National Bank* wrong-
fully and fraudulently pretended to be creditor of James F.
Sparks; denied that the plaintiff was the owner of the stock
of goods and fixtures in question; denied generally all the
allegations of the complaint; alleged the filing of the petition
in bankruptcy and the appointment of a trustee; that the
goods were sold pursuant to the stipulation for $11,000,
which sum is in the hands of the trustee under the stipula-

tion, and alleged "that the possession of said goods follow-
ing the adjudication in bankruptcy was in the custody of the
federal court and not in the custody of the defendant *John
Kuss* as sheriff," and prayed judgment dismissing the plaint-
iff's complaint and for costs and disbursements.   It is to be
here noted that in the answer of the trustee he asked for no
affirmative relief, set up no facts from which it appears that
the plaintiff was estopped to claim title as a partner or part
owner.   Upon the trial the plaintiff objected to any evidence
as to estoppel.   The trustee asked leave to amend his answer
"asking that the ownership of the property in and for
$11,000 be decreed to be in the trustee and for such other
and further relief as to the court may seem just and equi-
table.   We ask to be allowed to amend to the effect that the
plaintiff, *Nannie Sparks,* is estopped to claim a partnership
interest or any other interest in the name of J. F. Sparks
or in the business carried on by J. F. Sparks prior to Jan-
uary 3, 1925."

While this amendment did not give the answer the form
of a cross-complaint or counterclaim, in view of the fact that
by agreement of parties the trustee was in the case for the
purpose of litigating the title to the property in a repre-
sentative capacity, and in view of the further fact that the
trial court proceeded to litigate and try and find upon the
question of estoppel, it is considered that the case should
be treated as if the pleadings had been properly amended
as to form and substance.

While the bank is held to have had no right to attach
the property in the hands of the plaintiff on January 28,
1925, the situation as to the trustee is quite different.

In the determination of the questions presented upon this
branch of the case it now becomes necessary to decide
whether or not the plaintiff and her husband, J. F. Sparks,
were partners.   The trial court concluded that as a matter
of law the plaintiff could not be a partner of her husband,

and also found as a matter of fact that there was not sufficient proof of any partnership agreement; that since 1920 no specific partnership relation had been agreed upon or entered into in any manner, and that the plaintiff is estopped by her acts to assert any interest in the mercantile stock and fixtures as a partner. Courts and text-writers have hesitated to define partnerships. *Sullivan v. Sullivan,* 122 Wis. 326, 99 N. W. 1022. It is defined by the Uniform Partnership Act, sub. (1), sec. 123.03, Stats., as follows: "A partnership is an association of two or more persons to carry on as co-owners a business for profit."

The term "association" is a broad and comprehensive one. 5 Corp. Jur. 1333. While an association is voluntary and rests upon the assent of parties and is to that extent contractual, a partnership will be implied from conduct. The terms of a contract are not conclusive upon the courts. Even if parties stipulate that their relationship shall not be that of partners, where their conduct and dealings lead to a contrary conclusion the court will so hold despite the terms of the contract. While the partnership relation is in its inception contractual in its nature, once established it has in law a certain status and certain characteristic incidents. At common law, husband and wife could not be partners by reason of her lack of capacity to enter into a contract. *Fuller & Fuller Co. v. McHenry,* 83 Wis. 573, 53 N. W. 896. Under the Married Woman's Acts it is held in some jurisdictions that a wife might enter into a partnership with her husband and in other jurisdictions that she cannot, depending somewhat upon the language of the particular statutes and somewhat upon the notion of the courts as to the effect of the statutes upon the common-law disabilities of the wife. 30 Corp. Jur. 681.

In *Fuller & Fuller Co. v. McHenry, supra* (1892), this court adopted a construction of the Married Woman's Act under which it was held that it did not remove the disa-

Sparks v. Kuss, 195 Wis. 378.

bilities of the wife to enter into a partnership contract with her husband. The court said:

"The purpose and policy of the statute concerning the rights of married women, in our judgment, forbid the formation of a continuing business engagement between husband and wife, which shall produce a community of interest, liability, and profit, in which the husband would have, as partner, a right of control and management of the separate estate of the wife, so that he could sell and convert it into money from time to time, draw the firm moneys from the bank, and collect notes and bills receivable and dispose of the proceeds, in the payment of his debts or otherwise, without her knowledge or consent. . . . Manifestly, it was not intended that the act should receive a construction that would be subversive of the beneficent purposes for which it was enacted, and which would almost necessarily tend to strike down the protection it was intended married women should have under it in the use and enjoyment of their separate estates." Page 580.

This case has never been overruled or modified unless by the enactment of sec. 6.015, Stats., in 1921, which provides:

"Women shall have the same rights and privileges under the law as men in the exercise of suffrage, freedom of contract, choice of residence for voting purposes, jury service, holding office, holding and conveying property, care and custody of children, and in all other respects."

This statute was considered at length in *First Wis. Nat. Bank v. Jahn,* 179 Wis. 117, 190 N. W. 822, and in *Wait v. Pierce,* 191 Wis. 202, 209 N. W. 475, 210 N. W. 822. What was there said in reference to the effect of the statute and questions of public policy involved need not be repeated here. It is considered that the logic of those decisions requires us now to hold that a married woman may contract as a *feme sole* might do, and, consequently, a married woman may enter into a contract of partnership with her husband.

The questions of public policy involved are no doubt debatable. Under enabling acts it has been held that married

women may enter into a partnership agreement with the husband by the district courts of the United States and by the courts of last resort in Alabama, Georgia, Illinois, Indiana, Iowa, Kentucky, Mississippi, Missouri, New York, and Vermont, while the contrary has been held in Arkansas, Connecticut, District of Columbia, Louisiana, Maryland, Massachusetts, Michigan, Ohio, South Carolina, Washington, West Virginia, and Wisconsin.   See note, "Validity of partnership agreement between husband and wife," 20 A. L. R. 1304.

It appears with reasonable certainty that the determination of the trial court with reference to the facts relating to partnership was considerably influenced by his view respecting the law in regard to the capacity of a married woman to enter into a partnership contract with her husband, because upon the same evidence which the trial court held insufficient to establish a partnership the court held that the plaintiff and her husband were co-owners not only of the real estate, which was taken in the name of both the husband and wife, but of the mercantile stock and fixtures, which had always been held, insured, and assessed for taxation purposes in the name of the husband.   This finding of the trial court is well supported by the evidence.   The evidence seems equally conclusive upon the proposition that as between themselves the plaintiff and her husband were partners.   The difficult question arises when we consider whether or not the plaintiff is, as against her husband's creditors, in a position to assert her interest as a partner in the stock and fixtures.   It should be pointed out that we are not here concerned with the claims of any creditors of the store partnership.   The plaintiff does not deny or seek to evade her responsibilities for the debts of the store partnership.   On January 3, 1925, the partnership had debts of approximately $7,000.   Of this amount the plaintiff has discharged $4,000 and agreed to assume and discharge the remainder, so that as to the creditors of the store partnership no property has

been put beyond their reach or fraudulently conveyed. The question now to be determined is whether or not the plaintiff is estopped to assert her rights as against the creditors of J. F. Sparks, represented by the trustee in bankruptcy.

By sec. 47 of the Bankruptcy Act of 1898, as amended by the act of June 25, 1910, the trustee in bankruptcy, "as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied."

The title which the trustee takes to the property of the bankrupt is defined by sec. 70 of the act, by which he is vested, by operation of law, "with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all (1) . . . (2) . . . (3) . . . (4) property transferred by him in fraud of his creditors; (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him."

As has been stated, the trustee's title and right to the assets is threefold: (1st) the trustee succeeds to the bankrupt's title and stands in his shoes and has the bankrupt's rights and remedies; (2d) where the bankrupt has by some transfer, incumbrance, or holding of the property, void as to the bankrupt's creditors or inuring to their benefit by state law, for want of record or otherwise, the trustee succeeds to the rights of any creditor already qualified by state law to avoid the transfer, incumbrance, or holding, or who would be qualified thereby had such creditor, as to the property in the custody or coming into the custody of the bankruptcy court, held a lien by legal or equitable proceedings

thereon, or, as to the property not in such custody, been a creditor holding an execution duly returned unsatisfied, even though in fact no creditor may actually hold or have held such lien or execution; (3d) the trustee has the peculiar rights, conferred by the special provisions of the Bankruptcy Act, to avoid preferential and fraudulent transfers and liens obtained by legal proceedings within the four months preceding the bankruptcy. 4 Remington, Bankruptcy, p. 52, § 1402 *et seq.*

These and other provisions of the Bankruptcy Act invest the trustee in bankruptcy with a complete title, make available to him all of the remedies which any creditor might assert as against the bankrupt, and confer upon him the attributes of a creditor armed with process. As has been said, he is in a position of an ideal creditor; he has all the rights of any creditor for the benefit of the estate. Therefore, if the plaintiff was as to a creditor of the bankrupt, J. F. Sparks, estopped to assert title or interest as a copartner in and to the stock of merchandise and fixtures, that estoppel inures to the benefit of the trustee and may be pleaded by him. *In re Atwater* (1920), 266 Fed. 278; *Conron v. Cauchois* (1917), 242 Fed. 909.

It is the contention of the plaintiff here that the matter of estoppel is not involved. The facts from which it is claimed an estoppel arises have not been pleaded either by the bank, the sheriff, or the trustee, and therefore the question of estoppel is not presented. It is further argued that this being a replevin action and therefore an action at law, the plaintiff is entitled to the verdict of a jury upon all questions. This case as well as any to be found in the books illustrates the confusion and uncertainty which may be introduced into a trial of a cause by failure to observe the ordinary rules of pleading and procedure.

At the beginning of the trial the trial court attempted to confine the issues to such as were properly involved in the trial of the replevin action, but seems to have been overborne

in that respect by the insistence of plaintiff's counsel. The plaintiff by her amended complaint and the proof offered in support of the allegations of the amended complaint introduced into the case issues which are equitable in their nature. The petition and order making the receiver of the bank and the trustee of the bankrupt parties to this action are not returned with the record. From the facts recited in the stipulation that the goods might be sold, it may be inferred that the trustee was made a party upon the stipulation of the plaintiff. As already pointed out, the pleading by the trustee amounted to certain admissions as to undisputed facts, alleged the title to be in the trustee, and asked that the plaintiff's complaint be dismissed. In the course of the trial the trustee asked and was granted leave to amend his answer. The allegation in the amended answer "that the plaintiff, *Nannie Sparks,* is estopped to claim a partnership interest" was a mere legal conclusion. The facts out of which the estoppel arose were not pleaded at any time. However, the parties proceeded to litigate the question, and the court found against the contentions of the plaintiff and held that she was estopped to assert any interest in the stock of merchandise and fixtures. An orderly method of procedure would have required the trustee to file a pleading in the nature of a counterclaim or cross-complaint setting up the facts upon which it was claimed plaintiff was estopped, asking for a stay of proceedings in the replevin action until that matter had been determined. The bank conceded that as to it the attachment was dissolved by the adjudication in bankruptcy. If the property in the custody of the sheriff belonged to J. F. Sparks at the time it was attached, the bank could gain no advantage or preference as against the trustee by reason of its attachment, nor could it assert an estoppel in favor of creditors generally. That right could be asserted only by the trustee in bankruptcy, and his right to assert it is derived not from the fact that he represents the creditors but from the statute itself. *In re Farmers' Co-op. Co.* 202 Fed.

1008.  If such a procedure had been followed and the plaintiff had denied the allegations of the trustee's petition, an equitable issue would have been presented.   Having come into this action, the trustee asserts his right to defeat the plaintiff's claim of title.   In order to maintain her replevin action the plaintiff must prove title or right of possession in herself.   If the trustee's claims are good, the plaintiff's title is defeated thereby.   In the replevin action this presents an issue of fact triable by jury.   This right was denied the plaintiff and would constitute reversible error unless upon the whole record the evidence would sustain a finding by the jury that she was not estopped.   The court found, in addition to the facts already stated in regard to the marriage and business experience of plaintiff and her husband, that since the beginning of the merchandising business the store property was at all times insured in insurance policies and was thereby warranted to be the personal property of J. F. Sparks; that the plaintiff knew of such insurance policies, of the warranties therein contained, and acquiesced therein; that J. F. Sparks from time to time made financial statements to R. G. Dun & Company and other credit-rating houses and to wholesale houses, representing that he was the sole owner of the fixtures and stock in trade and that none but nominal indebtedness existed; that the plaintiff knew that such representations were made and acquiesced therein; that the checking account of the business was carried under the name of J. F. Sparks; that suits in relation thereto were brought in his individual name and that he made all contracts in his own name and as sole owner of the business in question; that the plaintiff never withdrew any profits from the alleged partnership; that no partnership income tax report, state or federal, was ever made or filed, although large taxable profits appear to have been made; that the entire stock of goods, fixtures, and realty were annually assessed to J. F. Sparks and the taxes paid by him; that no representation of partnership ownership was ever made to

the local assessor; that there never was a firm accounting between J. F. Sparks and *Nannie Sparks,* the plaintiff, prior to January 3, 1925; that *Nannie Sparks* down to the date of the bankruptcy never made a joint or several partnership or individual federal or state income tax return; that both the plaintiff and J. F. Sparks knew that such partnership and other returns were necessary; that in 1920 J. F. Sparks made a personal state income tax return showing profits which had accrued from the Sparks & Cole partnership, but made no mention of profits accruing from the partnership with his wife; that no written articles of partnership were ever entered into; that since 1920 no specific partnership relation was agreed upon, and that there was no record proof whatever indicating the existence of the partnership.

As before indicated, it is considered that the facts upon which the court found that the plaintiff was a co-owner with J. F. Sparks likewise establish that they were partners. However, the facts found by the court are relevant upon the question of estoppel. Without attempting to set out the evidence more in detail, it is considered upon the facts established by the evidence that the plaintiff, by reason of her conduct covering a period of more than twenty years, is now estopped as against the creditors of her husband, J. F. Sparks, to claim an interest as partner or co-owner in the merchandise and fixtures, and that if the case had been submitted to a jury and the jury had found otherwise its verdict could not stand. Outside of the fact that in some instances the plaintiff or her husband had told parties that she and her husband were "in together" or that "they had the business together," or something to that effect, there was no disclosure whatever by her to the public or to creditors generally that she claimed to be a partner or the owner of a one-half interest. Her conduct in that regard since 1921, when any disability as a married woman under which she may have labored prior to that time was removed, has been substantially the same as before. So far as the conduct of

the store business was concerned, it is no different than it is in a vast number of cases where a wife assists her husband in the conduct of his business and for which he alone is financially responsible.   Certain it is that in a vast majority of such cases it would work a great injustice to hold that a woman so assisting her husband was a partner and thus subject her separate estate to partnership liabilities.   It is equally destructive of the rights of creditors of the husband to permit such an undisclosed relation to exist and then permit the parties to disclose or not to disclose the true relationship as will best protect the interests of one or both, and possibly, as in this case, defeat the rights of creditors who extended credit relying upon the apparent relationship of the parties as disclosed by their conduct.   *Bergin v. Blackwood* (1919), 141 Minn. 325, 170 N. W. 508; *H. W. Wright L. Co. v. McCord,* 145 Wis. 93, 128 N. W. 873; "Estoppel, Married Women," 10 Ruling Case Law, p. 738, § 55 *et seq.*

Although plaintiff is estopped as against the individual creditors of her husband to assert her interest as a partner in the merchandise and fixtures, she is in the situation of an undisclosed principal as to the creditors of the store business and liable to them as a dormant or secret partner.   *Winship v. Bank of U. S.* 5 Pet. (30 U. S.) 529.

Estoppel *in pais* or equitable estoppel denies a party the right to show the fact as it exists on the ground that equity and justice will thereby be promoted; in other words, that equity and good conscience does not permit the party claimed to be estopped to show the truth.   Being an equitable doctrine it ought not to be so applied as to work wrong and injustice, and in this case, therefore, it must be held to apply only to such interest as the plaintiff would have in the assets of the store partnership after the creditors of the store partnership are discharged.   If the trustee in bankruptcy seeks the benefit of the doctrine of equitable estoppel he must take it with its burdens.

We reach this conclusion the more readily because under

the Bankruptcy Act (sec. 5) the interest of a bankrupt in a partnership cannot be administered by the bankruptcy court except upon the consent of the surviving partners. If they do not consent it is their duty to liquidate the affairs of the partnership and turn over to the trustee the bankrupt's interest therein. That is the just measure of the rights of the individual creditors of the husband in the partnership assets, and in this case the creditors gain a further right because as against the trustee in bankruptcy the plaintiff is estopped to assert any other or further interest in the proceeds of the partnership business.

It further appears from the testimony that after the 3d of January, 1925, the plaintiff paid and discharged partnership liabilities to the extent of approximately $4,000. If this amount was derived from her separate estate and not from the assets of the store partnership, she is entitled to be reimbursed therefor. If these liabilities were discharged from funds derived from the partnership business she would not be entitled to such an accounting.

It further appears that she purchased goods of the value of $4,000 which passed into the hands of the sheriff under the attachment process and were included in the sale by stipulation. If she purchased these goods on her separate account they belonged to her individually and were not subject to the claims of creditors of her husband, and plaintiff is entitled to an equitable accounting in that regard. Upon an accounting in these respects and payment to plaintiff of the amount found due her and upon the discharge of the liabilities of the store partnership, the trustee will be entitled to have the remainder paid to him on account of the bankrupt's estate, the issues in this respect to be determined by the court.

As between the plaintiff and J. F. Sparks she was the owner of a one-half interest in the business. While she is estopped to assert this as against his creditors to the extent of her interest in the partnership property, she is not es-

topped to assert it as against him, and we see no reason why she should not be permitted to prove it as a claim against the bankrupt's estate; but any claim which she may have against that estate must necessarily be asserted and established in the bankruptcy court and cannot be determined here. This court has power to adjudicate the title of the respective parties, particularly so under the stipulation made in this case, but has no jurisdiction to determine how the estate of the bankrupt shall be distributed.

As to the defendant *James B. Bereth,* receiver of the bank, and *John Kuss,* the plaintiff is entitled to judgment adjudging her the owner of the property attached and for costs and for such damages to be assessed by a jury, unless the parties stipulate otherwise, as she sustained by reason of the attachment down to the time that the trustee in bankruptcy took possession of the estate. The record does not disclose whether the plaintiff gave a bond in replevin or whether the defendants gave a bond and retained custody, or what the fact is in that regard. Whatever her rights under the facts as they existed may be, they should be determined in the replevin action as against the receiver and sheriff. As against the defendants *James B. Bereth* and *John Kuss,* the plaintiff is entitled to recover costs in this court. *Warde A. Wescott,* trustee in bankruptcy, is entitled to recover disbursements and cost of printing brief in this court against the plaintiff.

*By the Court.*—Judgment is reversed, and the cause remanded for further proceedings as indicated in this opinion.

The following opinion was filed March 7, 1928:

PER CURIAM. On the motions for rehearing claim is made on behalf of the plaintiff that the facts regarding the estoppel of the plaintiff as against the creditors of J. F. Sparks, bankrupt, were not fully litigated and that the findings in respect thereto were not sustained by the evidence.

This has led us to re-examine the case and we are convinced by such re-examination that the matter of estoppel should be relitigated upon the trial and that what is said in the opinion concluding the plaintiff in that respect is hereby withdrawn. It is not intended, however, that the rule of law there declared should be changed.

We are also asked to clarify the opinion with respect to what amount if any the plaintiff is entitled to be repaid out of the $11,000 fund. It was the intention of the court to refer to payments made by her subsequent to January 3, 1925. We shall not attempt to prejudge the matters remitted to the court for consideration on a new trial. Well established rules of law are no more difficult of application in this than in any other case.

Except as indicated, the motions for rehearing are denied; no costs to be taxed, the receiver, *James B. Bereth,* to pay the clerk's fees in this court.